UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
CITY OF NEW YORK,

                Plaintiff,

        - against -

A-1 JEWELRY & PAWN, INC., et al.,

             Defendants.
-------------------------------------------------X

**R E P O R T   A N D
RECOMMENDATION**

06 CV 2233 (JBW)

On May 15, 2006, plaintiff City of New York (the "City") filed a complaint in the above-

captioned case against fifteen (15) out-of-state firearms dealers, seeking damages, abatement

costs, and injunctive relief stemming from, inter alia, the alleged creation by the dealers of a

public nuisance in New York City, in violation of New York Penal Law §§ 400.05(1) and

240.45. (Compl.[1] ¶¶ 1, 271-87). In its Complaint, plaintiff asserted that the defendant dealers,

including defendant Mickalis Pawn Shop, LLC ("Mickalis Pawn" or "defendant"), engaged in

certain sales practices that facilitated the acquisition of firearms by individuals prohibited by law

from possessing those firearms. (Id. ¶¶ 14, 186-94, 273-74). These firearms were then recovered

from these individuals and/or used in violent crimes in New York City within a relatively short

time after their sale by defendants. (See id.).

On August 8, 2006, certain defendant dealers, including Mickalis Pawn (collectively,

---

[1]Citations to "Compl." refer to plaintiff's Complaint, filed May 15, 2006. Plaintiff also
asserted claims and sought damages for negligence per se, negligence, and negligent entrustment.
(Id. ¶¶ 288-310). These causes of action were not included in plaintiff's Amended Complaint,
filed August 29, 2007 ("Am. Compl.").

"moving defendants"), moved to dismiss the Complaint for lack of personal jurisdiction. These defendant dealers and the City engaged in limited jurisdictional discovery, during which this Court Ordered the moving defendants to disclose certain information relating to their sales of firearms, including trace requests received from law enforcement agencies. (See Order of February 6, 2007). The district court, by Order dated August 15, 2007, denied the moving defendants' motion to dismiss, finding that these defendants' conduct was "sufficient to provide the minimum contacts necessary for an exercise of personal jurisdiction by the State of New York." City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d 369, 428 (E.D.N.Y. 2007).

The City filed its Amended Complaint on August 29, 2007, limiting its allegations to the creation and maintenance of a public nuisance pursuant to New York Penal Law §§ 400.05(1) and 240.45, and seeking only injunctive relief, including supervision of each defendant by a court-appointed Special Master. (Am. Compl. ¶¶ 1, 274-86, p. 74). The parties then engaged in substantive discovery and, after the district court's denial of the moving defendants' renewed motion to dismiss for lack of personal jurisdiction on December 18, 2007, the parties made preparations for trial.[2] On March 12, 2008, counsel for defendant Mickalis Pawn moved to

---

[2] The Court notes that a number of the defendant dealers named in the Complaint and Amended Complaint, as well as in the related action of City of New York v. Bob Moates' Sport Shop, No. 06 CV 6504 (JBW), entered into settlement agreements with the City during the course of the above-described events, in which they agreed to supervision by a Special Master appointed by the district court. When the last of these defendants settled on August 21, 2008, the district court issued an oral statement and Order confirming its earlier jurisdictional findings and further finding that neither the Protection of Lawful Commerce in Arms Act, Pub. L. No. 109-92, 119 Stat. 2095 ("PLCAA"), nor the Supreme Court's decision in District of Columbia v. Heller, 128 S. Ct. 2783 (2008), barred judgment from entering in these cases. See City of New York v. Bob Moates' Sport Shop, No. 06 CV 6504 (JBW) (Oral Statement and Order, dated Aug. 21, 2008) at 7-10.

withdraw in light of the February 13, 2008 indictment of Larry Mickalis, the principal of Mickalis Pawn, that was filed in the United States District Court, District of South Carolina. After assuring that Mr. Mickalis was fully aware of the likely effects of his attorneys' withdrawal – namely, the entry of default against Mickalis Pawn – and that he consented to the withdrawal, this Court granted the motion to withdraw on March 27, 2008.

On April 1, 2008, plaintiff moved for entry of default against Mickalis Pawn, and on April 2, 2008, the Clerk of the Court entered default. By Order dated June 16, 2008, plaintiff's motion for default judgment against Mickalis Pawn, filed June 11, 2008, was referred to the undersigned to issue a Report and Recommendation, including findings of fact and law, if any, and the form of a decree to be issued by the district court. For the reasons set forth below, the Court respectfully recommends that the district court adopt the plaintiff's proposed findings of fact and conclusions of law in their entirety and issue a decree as set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, in its Amended Complaint, alleges that "thousands of handguns" have made their way to New York City in the possession of individuals who are prohibited by law from owning firearms. (Am. Compl. ¶ 2). These individuals often obtain handguns "directly or indirectly" from licensed firearms dealers who engage in illegal firearms sales practices, namely, so-called "straw purchases," in which a legal purchaser of a firearm immediately transfers possession of the firearm to an individual prohibited by law from possessing firearms. (Id. ¶¶ 2, 22, 58-63). Plaintiff notes that the New York State legislature has declared that illegally possessed handguns are a public nuisance and asserts that the criminal proclivity of individuals

barred from possessing handguns creates a "common law public nuisance – a condition that is injurious to the property, health, safety and comfort of a considerable number of persons." (Id. ¶ 3). Indeed, plaintiff cites to numerous incidents in which individuals in New York City have been injured or killed by illegally possessed handguns, including handguns sold by defendant Mickalis Pawn. (Id. ¶¶ 4, 14, 192-96).

Plaintiff asserts that between 1994 and 2001, 49 firearms sold by Mickalis Pawn, many of which were seized from illegal possessors and/or had been used in connection with crimes, were recovered in New York City, notwithstanding the fact that Mickalis Pawn is located over 700 miles from New York. (Id. ¶ 192).[3] The specific crimes in New York City involving handguns from Mickalis Pawn include: 1) a 1996 burglary in Manhattan, where the suspects had two loaded firearms; 2) a 1997 incident in which a bystander was hit by a bullet during a shootout in front of a Bronx shoe store; 3) a 1998 incident involving the arrest of a man who wielded a loaded handgun during a dispute in Brooklyn; 4) a 1998 Brooklyn robbery in which the suspects fired a gun during a struggle; 5) a 1999 incident in which a man pointed a loaded gun at an individual in a car in Brooklyn; 6) a 2001 Manhattan incident in which a 12-year-old boy accidentally shot someone in the chest; and 7) a 2001 incident in Brooklyn in which a man shot an individual in a dispute over a woman. (Am. Compl. ¶ 193). Plaintiff asserts that in each of

---

[3]The City further indicates that a number of additional firearms were recovered in the period between 2001 and 2007. (Proposed Findings of Fact and Conclusions of Law in Support of Entry of a Default Judgment Against Mickalis Pawn, LLC, filed June 11, 2008 ("Proposed Findings of Fact"), ¶ 18; see also Affidavit of Eric Proshansky in Support of Plaintiff the City of New York's Motion for Entry of a Default Judgment Against Defendant Mickalis Pawn Shop, LLC, dated June 10, 2008 ("Proshansky Aff."), Ex. 7). The Court notes that the Proposed Findings are divided into Proposed Findings of Fact and Proposed Conclusions of Law, and the Court refers to them accordingly.

these instances, the firearm used originated from Mickalis Pawn. In addition, plaintiff notes that the average "time to crime" – that is, the "interval between the retail sale of a gun and its recovery in a crime" – of the firearms sold by Mickalis Pawn and recovered in New York City is 3.7 years, compared to a time to crime average of 6 years for all guns recovered in New York City in connection with crimes. (Id. ¶¶ 57, 194).

The district court, in its August 15, 2007 Order denying the moving defendants' motion to dismiss, described Mickalis Pawn as "a major interstate supplier of Saturday Night Specials" – that is, "cheap, poorly-made handguns that are favored by some criminals" – to New York City. City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d at 379, 405. (See also Am. Compl. ¶ 196). The district court further noted that over half of the total handguns sold by Mickalis Pawn and recovered in crimes were recovered in New York City. 501 F. Supp. 2d at 406.

Prior to the filing of plaintiff's Complaint, the City retained investigators to test defendant's willingness to participate in straw purchases. As set forth in plaintiff's Amended Complaint, these investigators successfully simulated a straw purchase at the Mickalis Pawn store in Summerville, South Carolina, on April 20, 2006. (Am. Compl. ¶ 188). The City indicates that when these and other investigators attempted to simulate a straw purchase at other firearms dealers' places of business, many of these dealers "unequivocally identified the . . . scenario . . . as an attempt to engage in a straw purchase" and some refused to complete the sale. (Id. ¶ 189).

The City asserts that Mickalis Pawn has received information about straw purchases from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and thus should have

recognized the simulated straw purchase as illegal. (See id. ¶¶ 271-73). Defendant also should have been on notice that handguns it sold had been recovered in crimes, since ATF often contacts firearms dealers for details concerning the sale of a recovered handgun. (Id. ¶ 270). Indeed, discovery in this case revealed that between 2000 and 2006, ATF sought to trace at least 143 firearms sold by Mickalis Pawn. (Proposed Findings of Fact ¶ 20). Furthermore, in 2006, ATF sent Mickalis Pawn a demand letter stating that defendant "had an unusually high number of traces of new crime guns with a relatively short 'time-to-crime.'" (Id. ¶ 23; Proshansky Aff., Ex. 5). Although Mr. Mickalis, defendant's principal, was aware of these facts, he indicated that the high number of ATF traces did not concern him. (Proposed Findings of Fact ¶¶ 21-22). Nor did Mr. Mickalis implement any changes in Mickalis Pawn's sales practices in light of the communications from ATF. (Id. ¶¶ 21, 23).

Discovery revealed additional indications of defendant's lax attitude toward potentially illegal sales practices. Former employees of Mickalis Pawn testified in depositions that purchases similar to the City investigators' simulated straw purchases had "occurred repeatedly at Mickalis Pawn, and such sales were routinely completed by Mickalis Pawn employees." (Id. ¶ 6; Proshansky Aff., Exs. 2-4). Furthermore, these employees testified that Mickalis Pawn knowingly engaged in straw purchases with three individuals who were prohibited from purchasing – in this case, redeeming from pawn – firearms. (Proposed Findings of Fact ¶¶ 12-13; Proshansky Aff., Exs, 3-4). Specifically, although these individuals were prohibited from redeeming handguns they had previously pawned, Mr. Mickalis "nonetheless arranged to have the gun redeemed by a female companion or relative, knowing that the gun would be transferred to the individual" who was prohibited from completing the transaction. (Proposed Findings of

Fact ¶ 12; Proshansky Aff., Exs. 3-4).[4] When one of these former employees broached the subject of the illegal nature of defendant's actions with Mr. Mickalis, Mr. Mickalis told the employee not to tell him how to run his business. (Proposed Findings of Fact ¶ 14; Proshansky Aff., Ex. 3). Finally, plaintiff asserts that defendant permitted employees who themselves were prohibited from selling firearms to engage in firearms transactions and falsified federal firearms records to conceal this practice. (Proposed Findings of Fact ¶¶ 15-17; Proshansky Aff., Ex. 3).

On February 13, 2008, a grand jury in the United States District Court for the District of South Carolina returned an indictment against Mr. Mickalis, charging him with violating 18 U.S.C. §§ 922(d)(1) and 924(a)(2) by knowingly selling a firearm and ammunition to one Jesse O'Conner, "knowing and having reasonable cause to believe that Jesse O'Conner had been convicted of a crime punishable by imprisonment for a term exceeding one year." On February 27, 2008, counsel for Mickalis Pawn moved to stay the instant case pending the resolution of the criminal case against Mr. Mickalis, arguing that a stay was warranted in part because of the risk that evidence in this case could be used against Mr. Mickalis in his criminal trial. The district court denied defendant's motion on March 4, 2008, finding that Mr. Mickalis' interests would be adequately protected by an order of preclusion prohibiting the City from posing questions to Mr. Mickalis about events underlying the criminal indictment or which might require Mr. Mickalis to discuss the facts relating to the indictment. (Order of March 4, 2008 at 4).

Counsel for Mickalis Pawn[5] moved to withdraw from their representation of defendant on

---

[4]Indeed, at least one of these individuals was prosecuted for violating federal firearms laws in connection with a transaction at Mickalis Pawn. (Proshansky Aff. ¶ 16, Ex. 14).

[5]Mickalis Pawn was represented by three separate law firms – the Renzulli Law Firm, LLP, Pierce, Hearns, Sloan & McLeod, LLC, and the Kahn Law Firm. All three firms sought to

March 12, 2008. Counsel, who also represented another defendant in this case, argued in support of their motion that a conflict of interest existed between Mickalis Pawn and counsels' other client. Furthermore, counsel asserted that Mr. Mickalis had made the decision to concentrate his limited resources on the defense of his criminal case and he consented to his attorneys' withdrawal. The Court held a telephonic hearing on March 18, 2008, at which the Court questioned Mr. Mickalis to ensure that he understood the ramifications of his company's attorneys' withdrawal. Specifically, the Court ensured that Mr. Mickalis understood that, because a corporate entity such as Mickalis Pawn cannot appear in court without counsel, a default would enter and the injunctive relief sought by the City would likely be granted. (Tr.[6] at 17). On that same day, pursuant to the Court's request, the Renzulli firm filed a letter with the Court confirming that it had advised Mr. Mickalis that default judgment would enter against Mickalis Pawn and that defendant still intended to cease defending itself.

By letter filed March 19, 2008, in response to the Court's request, the City set forth the relief it anticipated seeking against Mickalis Pawn in a default judgment. Plaintiff indicated that the terms of the relief sought would likely mirror the bulk of the terms agreed to in the settlement agreements entered into by the City and the various settling defendants, but that those defendants had been granted certain concessions – namely, that the City would bear the cost of monitoring each settling defendant and that only nominal penalties would be imposed in the event the defendant committed a violation (as defined by the agreement) – in consideration for their

---

withdraw from further representation of defendant Mickalis Pawn.

[6]Citations to "Tr." refer to the transcript of the March 18, 2008 telephonic conference before this Court.

willingness to settle. (Pl.'s Letter of March 19, 2008 at 1). The City further noted that the relief requested in its Amended Complaint imposed the monitoring costs, which the City estimated to be more than $35,000 annually, on the defendant, and that penalties for violations would be substantial. (Id.) The Court, satisfied that Mr. Mickalis consented to withdrawal of his company's counsel and that he was aware of the potential consequences of that withdrawal, granted counsel's motion to withdraw by Order dated March 27, 2008.

Plaintiff moved for entry of default on April 1, 2008, and on April 2, 2008, the Clerk of the Court entered default against Mickalis Pawn. By Notice of Motion filed June 16, 2008, plaintiff moved for default judgment, submitting with its motion Proposed Findings of Fact and Conclusions of Law and a proposed Order Granting Injunctive Relief ("Proposed Order"). Plaintiff's Proposed Findings of Fact include information relating to, inter alia, straw purchases and other violations of federal firearms laws occurring at Mickalis Pawn, trace requests received from ATF, firearms sold by defendant and recovered in New York City, and crimes involving those firearms. (Proposed Findings of Fact ¶¶ 1-30). The Proposed Conclusions of Law include: 1) a public nuisance in the form of a large number of illegally possessed firearms exists in New York City; 2) Mickalis Pawn has contributed to the existence and maintenance of this nuisance by engaging in straw purchases; 3) Mickalis Pawn has violated or aided and abetted violations of federal firearms laws; and 4) Mr. Mickalis's "stated indifference to established indicators of gun trafficking" demonstrates that defendant will continue to engage in this conduct unless a permanent injunction issues requiring defendant "to engage in certain remedial measures." (Proposed Conclusions of Law ¶¶ 1-4). On June 16, 2008, the district court referred the matter to the undersigned for report and recommendation.

9

By Order dated July 18, 2008, the Court directed defendant to file opposition papers, if any, to plaintiff's motion and provided plaintiff with the opportunity to supplement its papers if it so wished. On July 25, 2008, the Court received a document from Mickalis Pawn, entitled "Objections," which recited twenty-one objections to plaintiff's motion.[7] A number of these objections are meritless: for example, defendant attempts to reargue that this Court lacks personal jurisdiction over it, notwithstanding two orders by the district court on this issue. (Def.'s Objections ¶¶ 1, 16). Defendant also misconstrues the nature of the Protective Order entered into in this action (id. ¶ 2), and the standards under which the evidence in a default judgment should be assessed. (See id. ¶¶ 4, 8).[8]

Defendant's remaining objections can be grouped into several categories. Objections 5

---

[7] As noted in the discussion at pp. 15-16, infra, given that Mickalis Pawn has failed to retain new counsel, it may not appear pro se before this Court, thus rendering this document legally ineffective. However, in light of the nature of defendant's default and Mr. Mickalis's stated interest in representing his company himself (see Tr. at 17-18), the Court proceeds to address these objections.

[8] The Court declines to set forth in detail each of defendant's objections, but notes that objections 3 (relating to service of the district court's referral order) and 7, 12, and 17 (all relating to the scope of the relief requested by the City) also fail to raise issues of fact or law. Particularly with respect to the latter group of objections, the Court notes that plaintiff's Amended Complaint explicitly requests an award of "such other and further relief as the Court may deem just and proper" (Am. Compl. at 74); as such, the City is free to request relief that differs from or exceeds that set forth in the Amended Complaint. In addition, objection 20 claims that "[i]t is beyond the permissible bounds of an injunction to set forth fines, penalties and similar payments to persons not parties to the action." (See Def.'s Objections ¶ 20). Plaintiff interprets this objection to mean that defendant objects to the payment by non-parties of fines or penalties. (The City of New York's Reply Memorandum in Support of Entry of Default Judgment Against Mickalis Pawn Shop, LLC, filed August 5, 2008 ("Pl.'s Reply"), ¶ 20). The language of the objection at issue could also be construed as an objection to the payment to non-parties of fines or penalties, for example, the costs and attorney's fees of the Special Master as set forth in paragraph 10 of the Proposed Order. Neither of these objections has merit, as Mickalis Pawn is a party to this case and the Amended Complaint clearly establishes grounds for requiring defendant to pay these costs and fees. (Am. Compl. at 74).

and 6 relate to the legal underpinnings of this case: defendant argues that there is no basis on which to find that Mickalis Pawn has caused or contributed to a public nuisance in New York City or that an injunction is the City's only avenue of relief. (Def.'s Objections ¶¶ 5, 6). Objections 10, 11, 13, 14, 15, 18, and 19 relate to provisions of the City's Proposed Order. Defendant takes issue with the fact that the Proposed Order would regulate defendant's pawn business (id. ¶ 10), that it would provide "unknown individuals" with access to defendant's records and inventory (id. ¶ 11), and that it would permit investigators to attempt to engage in simulated straw purchases ("integrity testing"), which defendant characterizes as illegal. (Id. ¶ 19). Defendant further contends that the Proposed Order is vague and confusing and thus fails to provide defendant with adequate notice of "what is expected, what is prohibited and what will result if lack of compliance, even if innocently erroneous, does not [sic] occur." (Id. ¶ 15; see also id. ¶¶ 13, 14, 18, 19). Objection 9 relates loosely to the question of which entities or individuals would be affected by the Proposed Order, taking issue with plaintiff's inclusion of the following phrase in the Proposed Order: "WHEREAS, Mr. Mickalis acknowledged . . . that he understood he would be found in default." (Def.'s Objections ¶ 9). Finally, objection 21 claims that the Proposed Order fails to take into consideration the harm to defendant that would stem from the issuance of an injunction. (Id. ¶ 21).

The City addressed these objections by reply filed August 5, 2008. As for objections 5 and 6, plaintiff notes that when a defendant defaults, a court accepts as true the allegations in the plaintiff's complaint and that "[a]n injunction abating the nuisance in lieu of damages is the quintessential remedy supported by hundreds of years of common law precedent for the tort of public nuisance." (Pl.'s Reply ¶¶ 5, 6 (citing cases)). Plaintiff further notes that the district

court, in its August 15, 2007 Order denying the moving defendants' motion to dismiss, found that "the Amended Complaint alleges facts that establish Mickalis Pawn's contribution to a public nuisance in the City of New York." (Id.) Plaintiff responds to objection 10 by noting that the Amended Complaint provides a basis for including monitoring of defendant's pawn business in plaintiff's relief. (Id. ¶ 10). As for objections 11 and 19, the City notes that any monitoring of defendant, including further simulated straw purchases, would take place pursuant to a court order. (Id. ¶¶ 11, 19).[9] As for defendant's objections based on vagueness, plaintiff asserts that the Proposed Order is clear and that defendant will be well informed as to the terms of the Special Master's requirements, and notes that defendant has failed to provide alternative language that it finds to be more clear. (Id. ¶¶ 13, 14-15, 18). Plaintiff notes in response to objection 9 that Mr. Mickalis chose to default on behalf of defendant. (Id. ¶ 9). Finally, plaintiff notes that defendant has not provided any facts in support of its assertion that it would be harmed by the injunctive relief requested. (Id. ¶ 21).

## DISCUSSION

A. Default

1. Standards

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule

---

[9]The City also notes that this Court, by Order dated January 25, 2008, found that the simulated straw purchases undertaken by plaintiff's investigators did not run afoul of the law. (Id. ¶ 19).

55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case. See id.; Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.").

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). If further investigation or evidence is necessary in order for default judgment to be entered, the court may conduct a hearing. See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95. Here, plaintiff moved for entry of default on April 1, 2008. The Clerk of the Court entered a default on April 2, 2008, and the City subsequently moved for default judgment, submitting detailed papers in support of its motion, on June 11, 2008. After the district court referred the motion, this Court, by Order dated July 18, 2008, provided defendant Mickalis Pawn the opportunity to respond to plaintiff's motion and reserved determination of whether a hearing was necessary pending the outcome of that Order.

As described above, the Court received a document entitled "Objections" from Mr. Mickalis on behalf of Mickalis Pawn on July 25, 2008. Plaintiff, by reply filed August 5, 2008, addressed the objections raised by defendant. The Court, having reviewed the parties' submissions, finds that a hearing is not necessary, particularly in light of the fact that there has been no Notice of Appearance filed by an attorney on behalf of Mickalis Pawn and the defendant corporation may not appear for such a hearing without counsel.

In determining whether a default judgment should enter, courts have cautioned that a

default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. at 95-96. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice," and ordering an inquest to determine damages).

The court possesses significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *1-2 (S.D.N.Y. Oct. 19, 1992). The greater the amount of money involved, the less justification there may be for entering the default judgment. See id. Additionally, a court may consider whether material issues of fact remain, see United States v. Farese, No. 80 CR 63, 1987 WL 28830, at *1 n.2 (S.D.N.Y. Dec. 15, 1987), whether the facts alleged in the complaint state a valid cause of action, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981), whether plaintiff has been substantially prejudiced by the delay involved, see Arthur F. Williams, Inc. v. Helbig, 208 F.R.D. 41, 48 (E.D.N.Y. 2002), and how

14

harsh the effect of a default judgment might be on the defendant. Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 10A Federal Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (gathering cases). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. Plaintiff is also entitled to "all reasonable inferences" from evidence offered in connection with the motion. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

2. Application

It is beyond dispute that defendant Mickalis Pawn is in default. As set forth above, the Court explicitly questioned Mr. Mickalis about defendant's decision not to further defend itself in this action. (See Tr. at 17). Defendant's former counsel subsequently submitted a letter to the Court in which counsel indicated that Mr. Mickalis had been advised that if the motion to withdraw were granted, "defendant will be without counsel and . . . the Court will enter default judgment against it." (Renzulli Letter of March 18, 2008 at 1). Counsel further stated that, this consequence notwithstanding, "[d]efendant still intends to cease defending itself against the City's complaint in this Court and, although it does not consent to the entry of default, has been informed that this Court will enter default against it on that basis." (Id.) See Oscar De La Renta Ltd. v. Strelitz Ltd., No. 92 CV 3907, 1993 WL 267341, at *1 (S.D.N.Y. July 12, 1993) (finding

defendant corporation in default where counsel had been discharged in light of defendant's decision not to defend the case).

Moreover, Mickalis Pawn has not obtained counsel in the time since its prior attorneys withdrew, and failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel). Although Mr. Mickalis stated his desire to defend his company himself (Tr. at 17-18), he is not an attorney and may not represent Mickalis Pawn. Mickalis Pawn's status as an unrepresented corporate defendant in this action constitutes a failure to defend.

The Court now turns to the relevant factors to be assessed in a motion for default judgment. Plaintiff asserts that the balance of the factors weighs heavily in favor of entry of default judgment, arguing that: 1) no money damages are sought; 2) no real issue of fact remains; 3) defendant made an informed and intentional decision to default; 4) the City has been prejudiced by defendant's nearly two-year opposition to the injunctive relief sought, while the nuisance "continu[ed] unabated as a result;" and 5) the effects of a default judgment are not harsh, given that the relief sought is largely the same as that voluntarily agreed to by the numerous settling defendants. (Pl.'s Mem.[10] at 6-7).

_____

[10]Citations to "Pl.'s Mem." refer to the Memorandum of Law in Support of Plaintiff the City of New York's Motion for Entry of Default Judgment Against Defendant Mickalis Pawn Shop, LLC, filed June 11, 2008.

Plaintiff further argues that the facts, as alleged in the Amended Complaint and further developed during discovery, establish that a public nuisance exists in New York City and that Mickalis Pawn has contributed to that nuisance. The City first asserts that "illegal guns impair the health and safety of a considerable number of persons in the City," citing to the thousands of violent crimes, including homicides, involving illegally possessed guns in New York City. (Id. at 10). These incidents, plaintiff maintains, easily constitute a public nuisance, which is an offense against the State defined as "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all . . . in a manner such as to offend public morals, interfere with the use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." (Id. at 9 (citing Copart Indus. Inc. v. Consol. Edison Co. of New York, 41 N.Y.2d 564, 568, 362 N.E.2d 968, 971, 394 N.Y.S.2d 169, 172 (1977))).

Next, plaintiff describes the conduct that contributes to this asserted public nuisance, beginning with certain documented sales practices. In addition to straw purchases, "a high-risk sales practice that is a well-recognized source of illegally trafficked guns" (id. at 11 (citing City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d at 377)), plaintiff describes sales of multiple handguns at one time to one purchaser, and sales of so-called Saturday Night Specials. (Id.) All of these practices were found to be risky by the district court. (Id.) Plaintiff asserts that although it is often difficult to demonstrate directly that a firearms dealer engages in these practices, certain useful indicators exist to this end: 1) the number of guns sold by a dealer that are recovered in connection with crimes, 2) the time to crime for those guns, and 3) incidents of straw purchases at a dealer's store, as indicated by prosecutions of the dealer's customers for

17

engaging in such purchases. (Id. at 11-12).

Plaintiff then argues that there is clear and convincing evidence in this case that establishes that Mickalis Pawn has contributed to the public nuisance of illegally possessed firearms in New York City. (Id. at 13). Plaintiff refers the Court to the number of guns sold by defendant and recovered in New York City, defendant's short time to crime, the fact that the serial numbers on some of the recovered guns had been defaced, and the fact that the vast majority of these guns were Saturday Night Specials. (Id. (citing Am. Compl. ¶¶ 192-96)). In addition, plaintiff asserts that discovery in this case revealed further indications of defendant's contribution to the nuisance, in the form of additional traced firearms, a significant number of ATF trace requests directed to defendant, the ATF demand letter to defendant, and Mr. Mickalis's stated indifference to ATF's interest in his business practices. (Id. at 13-16).

Perhaps the most damning evidence, however, was provided by defendant's former employees, who testified in depositions that straw purchases were fairly common at Mickalis Pawn, and that Mr. Mickalis arranged for the family members of customers prohibited from purchasing or redeeming pawned guns to redeem those guns. (Id. at 17-23).[11] These employees further testified that Mickalis Pawn conducted a robust business in Saturday Night Specials, and document discovery revealed that a fair number of multiple sales occurred at defendant's store. (Id. at 23-24). Finally, plaintiff points to the three prior prosecutions of Mickalis Pawn's customers for engaging in straw purchases at the store. (Id. at 24-25).

---

[11]Plaintiff further notes that at least one former employee was a convicted felon and as such, should have been prohibited from selling or redeeming firearms. (Id. at 20, n.13). This employee testified that Mr. Mickalis permitted him to sell firearms and would falsify the relevant forms to make it appear that the employee had not been involved in the transaction. (Id.)

As for defendant's Objections, the Court notes that even if the Court were to factor this document into its analysis of whether default judgment should enter – which the Court may not do because the document has no legal effect – these objections are overwhelmingly addressed to the terms of the City's Proposed Order and do not respond to the City's arguments about whether default judgment should enter. Even the objections that are pertinent to the present inquiry are easily disposed of: for example, defendant's argument that there are no facts to demonstrate the presence of a public nuisance in New York City (Def.'s Objections ¶¶ 5-6) fails in light of the fact that the Court accepts as true the factual allegations in the Amended Complaint. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. Furthermore, defendant's contention that the Proposed Order would work harm to Mickalis Pawn and others fails to specify the nature of the harm and alone is insufficient to tip the balance in defendant's favor. As such, the Court finds that defendant has failed to act to set aside the default pursuant to Fed. R. Civ. P. 55(c).

To the contrary, the Court finds that the relevant factors in this case support entry of default judgment against defendant. The facts have been developed over the course of in-depth and hotly contested discovery, such that no material issue of fact remains unresolved at this point. In addition, as plaintiff notes, only an injunction is sought in this case, so the issue of money damages is not a concern. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default).[12]

_____

[12]The Court notes that the terms of the Proposed Order require defendant to post a bond in the amount of $25,000; that penalties, if assessed, must be paid out of the bond (which then must be restored); and that the costs and fees of the Special Master must be borne by defendant.

The Court ensured that defendant's default, while reluctant, was entirely informed. Finally, the potential harm to the City vastly outweighs any harm to defendant, which would essentially be required to engage in sales practices that comport with federal firearms laws.

The Court finds that a public nuisance exists in the form of illegally possessed firearms in New York City. See N.Y. Penal L. § 400.05(1). Furthermore, the Court finds that plaintiff has set forth more than sufficient evidence to demonstrate that defendant Mickalis Pawn engages in sales practices that contribute to this public nuisance. Indeed, the district court, when reviewing only the information contained in the Amended Complaint, found that "[t]his evidence documents, for each defendant, a decade-long, if not longer, practice of facilitating the illegal sale of guns for movement into the New York City market." City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d at 425. Discovery in this case revealed direct evidence of such practices by defendant, in the form of testimony by defendant's former employees that straw purchases were not uncommon at Mickalis Pawn's store, testimony that Mr. Mickalis facilitated the redemption of pawned handguns while knowing these guns would return to the hands of those prohibited from possessing them, and prosecutions of defendant's customers for engaging in straw purchases.

The Court finds that defendant Mickalis Pawn has failed to defend in this action and that plaintiff has established both the presence of a public nuisance in New York City and defendant's contribution to that nuisance. Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted.

---

(Proposed Order ¶¶ 2, 6, 10-12). These amounts – which the Court notes are not money damages themselves – are insufficient alone to preclude entry of default judgment.

In addition, the Court has thoroughly reviewed the plaintiff's Proposed Findings of Fact and the evidence submitted in support thereof and accordingly, respectfully recommends that plaintiff's Proposed Findings of Fact and Conclusions of Law, filed June 11, 2008, be adopted in their entirety.

## B. Relief

Plaintiff requests injunctive relief in the form of a permanent injunction against Mickalis Pawn containing terms and conditions similar to those agreed to by the numerous settling defendants in this case. The specific terms are set forth in the City's Proposed Order, filed June 11, 2008 in connection with plaintiff's motion for default judgment. Plaintiff requests, inter alia, that: 1) a Special Master, whose fees and expenses are to be paid by defendant, be appointed for a period of at least five (5) years to monitor and train defendant to ensure defendant's compliance with applicable firearms laws; 2) the Special Master be granted the ability to employ a number of tools to ensure this compliance, including in-store observation, records monitoring, integrity testing, inventory inspection, and instructional programs; 3) any disputes about the Special Master's decisions regarding defendant's compliance with the injunction be resolved by the Special Master, with a right to review by the court, but a requirement that defendant pay the Special Master's costs and attorney's fees up to $10,000 if defendant's challenge is denied; 4) defendant be required to post a bond of $25,000; 5) in the event that defendant sells a firearm in violation of the law, defendant be required to forfeit from the bond $10,000 for the first violation, $15,000 for a second violation, and $20,000 for a third violation, with the additional requirement that the bond be restored to its full amount after any violation. (See Proposed Order).

As the City notes, the terms of the Proposed Order are largely similar to the terms to which the settling defendants agreed. There are three primary differences, all reflecting the City's consideration for the settling defendants' willingness to settle. For the settling defendants, the period of supervision by the Special Master is three years, not five as proposed for Mickalis Pawn. (See, e.g., Stipulation and Settlement Agreements between the City and Jim's Guns and Whatever, So Ordered by the district court on September 28, 2007 and between the City and Nancy Dailey d/b/a Peddler's Post, Gallery Distributing, Inc., and Woody's Pawn Shop, all So Ordered by the district court on April 29, 2008). In addition, for the settling defendants, the City agreed to pay the Special Master's fees and expenses. (Id.) Finally, the fines established for the settling defendants in the event of a future violation are significantly lower; for the first, second, and third violations, the fines for the settling defendants are $500, $1,000, and $1,500, respectively. (Id.)

Defendant's purported objections to the terms of the Proposed Order are described in the discussion at p. 10-11, supra. Again, the Court notes that these objections are legally ineffective, given that defendant is a corporation and cannot appear without counsel. Even if this document were entitled to some legal weight, however, the Court finds the objections to be without merit. First, the City asserts, and the Court finds, that the Proposed Order is consistent with the relief requested in plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 54(c) (requiring that a default judgment "not differ in kind from, or exceed in amount, what is demanded in the pleadings"). (See Am. Compl. at 74). As such, the relief requested is proper. Furthermore, the Court does not find that the Proposed Order is vague or confusing. Its terms are clear and explicitly set forth what constitutes the straw purchases in which defendant is to cease its

involvement. Any future requirements of the Special Master will be clearly communicated to defendant. (See Pl.'s Reply ¶ 13).

The City argues that a permanent injunction is the proper relief in this case, as it is "clearly appropriate to abate a public nuisance." (Pl.'s Mem. at 25-26 (citing New York State Nat'l Org. of Women v. Terry, 886 F.2d 1339, 1361-62 (1989) (finding that a permanent injunction properly issued against defendants' creation of a public nuisance))). The City further asserts that it has satisfied the requirements for a permanent injunction – irreparable harm and the absence of an adequate remedy at law. (Id. at 26). See New York State Nat'l Org. of Women v. Terry, 886 F.2d at 1362 (noting that "[g]enerally, to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted) (citing Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57 (1975)).

As to the first element, plaintiff argues that irreparable harm is "essentially self-evident with respect to illegal gun possession and use in New York City . . . in the form of individual injuries and deaths, substantial law-enforcement and public-health costs, and the pervasive undermining of the effectiveness of, and respect for, New York's firearms[] laws and regulations." (Pl.'s Mem. at 26). Plaintiff then asserts that only injunctive relief is adequate, given the "forward-looking nature of the relief sought," namely, the City's desire to prevent future incidents contributing to the public nuisance. (Id.) Furthermore, in its Proposed Conclusions of Law, which the Court has recommended be adopted in its entirety, the City states that "Larry Mickalis'[s] stated indifference to established indicators of gun trafficking[] indicates that there is a reasonable likelihood that Mickalis Pawn will continue to engage in the conduct alleged in the Amended Complaint unless permanently enjoined therefrom and required to

23

engage in certain remedial measures." (Proposed Conclusions of Law ¶ 4).

The Court finds that a permanent injunction is the proper relief to be awarded in this action. Plaintiff has established the irreparable harm stemming from the presence of illegally possessed firearms in New York City. Furthermore, money damages are clearly an inadequate remedy here, since fines could be assessed only after the harm has already occurred; such fines arguably would do little to prevent the harm from occurring in the first instance. In addition, Mr. Mickalis's own testimony and the testimony of his former employees indicate that there is little likelihood that defendant's sales practices will change in the near future. As such, the Court finds that a permanent injunction consistent with the terms of plaintiff's proposed Order Granting Injunctive Relief should issue.[13]


## CONCLUSION

The Court respectfully recommends that default judgment be entered against defendant Mickalis Pawn and that plaintiff's Proposed Findings of Fact and Conclusions of Law be adopted in their entirety. The Court further recommends that a permanent injunction issue against defendant Mickalis Pawn consistent with the terms of plaintiff's proposed Order Granting Injunctive Relief, subject to the modification set forth above.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See

---

[13]The Court finds, however, that the fourth "Whereas" clause on page one of the Proposed Order should be amended to read: "WHEREAS, Mr. Mickalis acknowledged that same day that he understood that Mickalis Pawn would be found in default . . . ."

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        September 3, 2008

Cheryl L. Pollak
United States Magistrate Judge