UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

THE CITY OF NEW YORK,

                Plaintiff,

-against-

A-1 JEWELRY & PAWN, INC.; ADVENTURE OUTDOORS, INC.; COLE'S GUN SHOP, INC.; DUNKELBERGER'S SPORTS OUTFITTERS; GALLERY DISTRIBUTING INC.; GREG L. DRIGGERS d/b/a AAA Gun & Pawn Brokers; THE GUN STORE, INC.; HAROLD W. BABCOCK, JR. d/b/a Webb's Sporting Goods; JAMES THOMAS FARMER d/b/a Jim's Guns and Whatever; MICKALIS PAWN SHOP, LLC; NANCY DAILEY d/b/a Peddler's Post; OLD DOMINION GUNS & TACKLE, INC.; PATRIOT SERVICES, INC.; VIRGINIA FIREARMS & TRANSFERS, INC.; WELSH PAWN SHOP, INC. d/b/a Big Tom's Pawn Shop; WOODROW C. HOLMAN III d/b/a Woody's Pawn Shop,

                Defendants.

06-CV-2233(JBW)(CLP)

----------------------------------------------------------x

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ENTRY OF A DEFAULT JUDGMENT AGAINST MICKALIS PAWN SHOP, LLC

The Court adopts the following Findings of Fact and Conclusions of Law in support of the entry of a default judgment against defendant Mickalis Pawn Shop, LLC and the issuance of a permanent injunction against Mickalis Pawn Shop, LLC as provided by the Court's Order and Judgment, entered this same day:

### Findings of Fact

1.     Mickalis Pawn Shop, LLC ("Mickalis Pawn") is a South Carolina limited liability company with a principal place of business located at 1024 N. Main Street, Summerville, South Carolina, 29483. *Am. Compl.* ¶ 39.

2.  Mickalis Pawn sells new and used guns under a federal firearms license issued to Larry Mickalis. *Mickalis Tr.* (Ex. 1) at 20:17-21.

3.  On or about April 20, 2006, Mickalis Pawn sold a gun in a simulated straw purchase to a City investigator (the "Integrity Test"). *Am. Compl.* ¶ 188; *Jean-Charles Tr.* (Ex. 2) at 95:1 – 96:12. The Integrity Test displayed the warning signs of a straw purchase that have been described by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and in trade literature, such as the "Don't Lie For The Other Guy" materials issued by the National Shooting Sports Foundation. *Am. Compl.* ¶ 189; *Don't Lie for the Other Guy: A Retailer's Guide to Recognizing and Deterring Straw Purchases* (Ex. 12).

4.  The investigator who made the purchases from Mickalis Pawn, Connie Reaves, truthfully completed the Forms 4473 required when purchasing the firearm, indicating that she was the actual purchaser of the gun. Though the firearm was purchased as part of an investigation conducted by the City, Ms. Reaves retained possession of the firearm after the purchase. Therefore, while the Integrity Test bore the hallmarks of a straw sale, no straw sale actually took place because ownership was never transferred from Ms. Reaves to another person. *See* Magistrate Judge Pollak's Order of January 25, 2008 (Document No. 451) at 7-8. Magistrate Judge Pollak denied Mickalis Pawn and other defendants' motion to reconsider the January 25 Order, by order dated February 12, 2008 (Document No. 523); the District Court affirmed Magistrate Judge Pollak's ruling by order dated March 4, 2008 (Document No. 588)).

5.  Investigators working on behalf of New York City conducted similar Integrity Tests on gun dealers located in South Carolina and several other states. Many other gun dealers who were the subjects of the Integrity Test refused to sell a gun to City investigators, identifying and rejecting the purchase as an attempted straw purchase. *Am. Compl.* ¶ 189.

6. According to former Mickalis Pawn employees Robert Jean-Charles, Jeffrey Loffredo and Dacey Zammetti, straw purchases similar to the City's Integrity Test had occurred repeatedly at Mickalis Pawn, and such sales were routinely completed by Mickalis Pawn employees. *Jean-Charles Tr.* at 95:1-19, 102:9 – 122:10, 151:12 – 153:23; *Loffredo Tr.* (Ex. 3) at 55:2-7, 59, 63:14 – 65:16, 140:17 – 141:5, 142:6-14; *Zammetti Tr.* (Ex. 4) at 56:13 – 57:7, 62:1 – 66:25, 71:8 – 73:24, 75:2 – 78:1.

7. In the Integrity Test at Mickalis Pawn, only the male investigator interacted with Mr. Jean-Charles, discussing and selecting a Hi-Point handgun to purchase. When Mr. Jean-Charles asked the male investigator for his driver's license, the male investigator summoned the female investigator to give hers, which she did. After the male investigator said that he would take the gun and four boxes of ammunition, the salesperson again asked the male investigator if he had his license. The male investigator indicated that he did not. Mr. Jean-Charles then said, "she's going to have to do it then." The male investigator responded, "That's fine, she will do the paperwork." The salesperson then handed the forms to the female investigator and addressing the male investigator, said "She's getting this for herself." The male investigator responded, "Right." The salesperson did not ask any questions of the female investigator, but rather accepted the paperwork and sold the gun. Mr. Jean-Charles did not ask any questions of the female investigator, but rather accepted the paperwork and sold the gun. The male investigator paid for the gun. *Am. Compl.* ¶ 188; *see Jean-Charles Tr.* at 108:2-16, 116:10-15.

8. Mr. Jean-Charles characterized the events in the Integrity Test as nothing out of the ordinary. *Id.* at 174:5-10.

9. Mr. Jean-Charles has testified that, as long as a Mickalis Pawn customer states he or she is the actual buyer of the gun and signs Form 4473, without any more, a sale may proceed. *Id.* at 176:13-25.

10. Mr. Jean-Charles stated that it was not uncommon for male and female customers to enter Mickalis Pawn together and for the male to ask all of the questions, choose a gun, and pay for the gun, with the female customer simply filling out the paperwork for the purchase. *Id.* at 116:16 – 117:10; 151:12 – 152:1. In that circumstance, Mr. Jean-Charles felt no obligation to ask the male if he were prohibited from purchasing the gun. *Id.* at 151:12 – 152:1.

11. Mr. Jean-Charles cannot recall ever denying a sale because he suspected that a straw purchase was in progress. *Id.* at 85:18-21; 151:19-22.

12. Mickalis Pawn knowingly engaged in straw purchases with William Dixon, a Mr. Varner (FNU), and Stevie Lamont Campbell. *See Loffredo Tr.* at 59, 63:14 – 65:16; *Zammetti Tr.* at 56:13 – 57:17, 62:1 – 66:25, 71:8 – 73:24, 75:2 – 78:1.

13. In the transactions involving Messrs. Dixon, Varner and Campbell, each of them attempted to redeem a gun from pawn but were denied as ineligible following a National Instant Criminal Background Check System ("NICS") check conducted through the FBI. In each instance, Larry Mickalis nonetheless arranged to have the gun redeemed by a female companion or relative, knowing that the gun would be transferred to the individual that had failed the NICS check. Larry Mickalis knew that the gun was transferred back to Mr. Dixon, because Dixon periodically returned to pawn the same gun. *See Loffredo Tr.* at 54:20 – 56:11, 57:11 – 60:6, 61:1 – 63:11; 65:9 – 66:13; *Zammetti Tr.* at 61:17 – 66:23, 67:10 – 73:24, 74:17 – 77:17.

14. The illegal nature of the transactions with William Dixon and others was brought to Larry Mickalis' attention. He took no steps to halt this practice, and in fact told an employee "Don't tell me how to run my business." *Loffredo Tr.* at 176:7-21.

4

15. Mickalis Pawn falsified federal firearms records by permitting Jeffrey Loffredo, a convicted felon, to participate in gun sales for which store employees other than Loffredo executed the Forms 4473. *See Loffredo Tr.* at 25:20-21, 29:13 – 31:17.

16. By employing Jeffrey Loffredo to sell firearms, Mickalis Pawn aided and abetted the possession of firearms by a felon. *See id.*

17. By employing William "Clay" Mishoe to sell firearms, Mickalis Pawn aided and abetted the possession of firearms by a felon. *See Zammetti Tr.* at 94:24 – 96:5; *Loffredo Tr.* at 34:15 – 36:15.

18. Between 1994 and 2007, 67 guns sold by Mickalis Pawn were traced to crimes in New York City. *See Am. Compl.* ¶ 192 (49 guns identified in trace data); Ex. 7 (ATF trace requests to Mickalis Pawn showing 10 additional guns recovered in New York City; eight additional guns identified by matching serial numbers and brands of handguns from Mickalis Pawn's sales data with New York Police Department ballistics data).

19. The number of traces recovered from the entire United States for an average gun dealer is 0.67 per year, or approximately nine (9) guns for this same period. *See* Ex. 9 (*Commerce in Firearms* report).

20. Between 2000 and 2006, the Federal Bureau of Alcohol, Tobacco, Firearms & Explosives has sought to trace at least 143 guns sold by Mickalis Pawn. *See* Ex. 7. The number of traces recovered from the entire United States for an average gun dealer is 0.67 per year, or approximately five (5) traces for this same period. *See* Ex. 9 (*Commerce in Firearms* report).

21. Larry Mickalis took no steps to change the sales practices of Mickalis Pawn despite this disproportionate number of traces. *See Mickalis Tr.* at 73:13 – 74:4.

22. Mr. Mickalis instead testified that the number of trace requests he receives per month does not concern him, and that even were he to receive thirty trace requests per month, he would not be concerned. *See id.* at 246:5-25.

23. By letter dated August 8, 2006, ATF sent Mickalis Pawn a letter stating, *inter alia,* "you had an unusually high number of traces of new crime guns with a relatively short time-to-crime." *See* ATF Demand Letter of August 6, 2006 (Ex. 5); *Mickalis Tr.* at 75:16 – 76:4. Despite that warning, Mr. Mickalis took no steps to change Mickalis Pawn's sales practices. *See Mickalis Tr.* at 82:5-19.

24. Guns sold by Mickalis Pawn are recovered in New York City in connection with crimes, with short times to crime. In one instance, a firearm sold by Mickalis Pawn was recovered in New York City within eighteen (18) days after the date of sale. *Am. Compl.* ¶ 194. The average time to crime for the firearms sold by Mickalis Pawn recovered in New York City is 4.5 years (the average time to crime of the Mickalis Pawn guns recovered in New York City indicated by trace data is 3.7 years. *Id.*). The current average time to crime for all guns recovered in New York City is 13 years (*See* Ex. 10).

25. Guns sold by Mickalis Pawn were involved in the following reported incidents in New York City:

> a) In June 1996, police arrested five suspects who were apparently burglarizing an apartment in Manhattan. The suspects had two loaded guns, an Uzi and a Glock 9mm;
>
> b) In June 1997, during a shootout in front of a shoe store in the Bronx, a bystander was hit by a bullet that went through a window;
>
> c) In April 1998, a man was arrested when he pulled out a loaded .380-caliber semi-automatic handgun during a verbal dispute in a Brooklyn apartment;

> d) In May 1998, men used a semi-automatic gun in a robbery of a grocery store in Brooklyn and fired it during a struggle. The gun was left behind when the suspects fled the scene;
>
> e) In October 1999, a victim in Brooklyn said that a man opened his car door and pointed a 9mm Lorcin at him. The suspect walked away when the victim said he had no money;
>
> f) In January 2001, a 12-year-old boy in Manhattan was playing with a semi-automatic handgun and accidentally shot someone in the chest; and
>
> g) In July 2001, a 24-year-old was arrested in a park in Brooklyn after he shot an 18-year-old in the upper thigh in a dispute over [the] suspect's ex-girlfriend, who witnessed the shooting.

*Am. Compl.* ¶ 193.

26. Forty-three per cent of the handguns sold by Mickalis Pawn between 2000 and 2007 were Saturday Night Specials, mostly High Points. *See* Mickalis Pawn's Amended Second Supplemental Responses to the City's First Set of Interrogatories at 12 (Ex. 6).

27. Seventy per cent of the guns sold by Mickalis Pawn and recovered in New York City are Saturday Night Specials, brands of guns known to be favored by gun traffickers. *Am. Compl.* ¶ 196.

28. Mr. Mickalis testified that he was unconcerned that a large proportion of the guns sold by Mickalis Pawn that were subsequently the subject of trace requests by ATF were Hi-Points. *Mickalis Tr.* at 71:14-20, 74:13 – 75:4.

29. Twenty-eight per cent of the guns sold by Mickalis Pawn and recovered in the City have had their serial numbers defaced, a feature known to be associated with trafficked guns. *Am. Compl.* ¶ 195.

30. Between 2000 and 2007, Mickalis Pawn sold at least 74 guns as part of multiple sales. *See* Ex. 6. Data from an earlier period illustrates that guns sold by Mickalis

Pawn as part of a multiple sale were subsequently recovered in crimes. For example, on August 6, 1993, Mickalis Pawn sold at least six Hi-Points, three of which were recovered in New York City. On October 2, 1995, Mickalis Pawn sold two Lorcins, both of which were recovered in New York City. *See* Ex. 13.

## Conclusions of Law

1. A public nuisance exists in the City of New York, in the form of large numbers of illegally-possessed firearms. Illegally possessed guns interfere with the health and safety of a large number of persons within the City.

2. Mickalis Pawn has contributed to the existence and maintenance of this public nuisance in the City by knowingly engaging in sales practices that permit handguns to be obtained by persons prohibited from possessing them.

3. Mickalis Pawn has violated federal firearms laws or has aided and abetted the violation of those laws by:

    (i) knowingly permitting a felon to possess firearms, and

    (ii) knowingly falsifying records that are required to be kept in the records of a licensed firearms dealer.

4. Larry Mickalis' stated indifference to established indicators of gun trafficking, indicates that there is a reasonable likelihood that Mickalis Pawn will continue to engage in the conduct alleged in the Amended Complaint unless permanently enjoined therefrom and required to engage in certain remedial measures.

**SO ORDERED.**

Dated: Brooklyn, New York
      9/17, 2008

_____
United States District Judge

9