UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
CITY OF NEW YORK,

                Plaintiff,

        - against -

A-1 JEWELRY & PAWN, INC., et al.,

                Defendants.
-------------------------------------------------X

**R E P O R T    A N D
RECOMMENDATION**

06 CV 2233 (JBW)

On May 15, 2006, plaintiff City of New York (the "City") filed a complaint in the above-captioned case against fifteen (15) out-of-state firearms dealers, seeking damages, abatement costs, and injunctive relief stemming from, inter alia, the alleged creation by the dealers of a public nuisance in New York City, in violation of New York Penal Law §§ 400.05(1) and 240.45. (Compl.[1] ¶¶ 1, 271-87). In its Complaint, plaintiff asserted that the defendant dealers, including defendant Adventure Outdoors, Inc. ("Adventure Outdoors" or "defendant"), engaged in certain sales practices that facilitated the acquisition of firearms by individuals prohibited by law from possessing those firearms. (Id. ¶¶ 6, 90-101, 273-74). These firearms were then recovered from these individuals and/or used in violent crimes in New York City within a relatively short time after their sale by defendants. (See id.).

On August 8, 2006, Adventure Outdoors, along with certain other defendant dealers, filed

---

[1]Citations to "Compl." refer to plaintiff's Complaint, filed May 15, 2006 (Doc. No. 1). Plaintiff also asserted claims and sought damages for negligence per se, negligence, and negligent entrustment. (Id. ¶¶ 288-310). These causes of action were not included in plaintiff's subsequently filed Amended Complaint, filed August 29, 2007 (Doc. No. 234) ("Am. Compl.").

a motion to dismiss the Complaint for lack of personal jurisdiction. Following limited

jurisdictional discovery, including the disclosure of certain information relating to defendant's

sales of firearms, including trace requests received from law enforcement agencies (see Order of

February 6, 2007 (Doc. No. 144)), the district court denied the moving defendants' motion to

dismiss, finding that defendants' conduct was "sufficient to provide the minimum contacts

necessary for an exercise of personal jurisdiction by the State of New York." City of New York

v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d 369, 428 (E.D.N.Y. 2007) (Doc. No. 217).

On August 29, 2007, the City filed an Amended Complaint, seeking only injunctive

relief, and limiting its allegations to the creation and maintenance of a public nuisance pursuant

to New York Penal Law §§ 400.05(1) and 240.45. Among other things, the City sought an Order

requiring the defendants to submit to the supervision of a court-appointed Special Master. (Am.

Compl. ¶¶ 1, 274-86, p. 74). On September 21, 2007, defendant Adventure Outdoors filed a

second motion, seeking to dismiss the Amended Complaint, again asserting lack of personal

jurisdiction (Doc. No. 259). That motion was also denied by the district court on December 18,

2007 (Doc. No. 402).

The parties then engaged in substantive discovery and began preparations for trial as to

defendant Adventure Outdoors.[2] On April 30, 2008, defendant brought a motion for summary

---

[2]During this time, a number of the defendant dealers named in the Complaint and
Amended Complaint, as well as in the related action of City of New York v. Bob Moates' Sport
Shop, No. 06 CV 6504 (JBW), entered into settlement agreements with the City, agreeing to
supervision by a Special Master appointed by the district court. Following the last of these
settlements, the district court entered an oral statement and Order, on August 21, 2008,
confirming its earlier jurisdictional findings and further finding that neither the Protection of
Lawful Commerce in Arms Act, Pub. L. No. 109-92, 119 Stat. 2095 ("PLCAA"), nor the
Supreme Court's decision in District of Columbia v. Heller, 128 S. Ct. 2783 (2008), barred
judgment from entering in these cases. See City of New York v. Bob Moates' Sport Shop, No.

judgment (Doc. No. 665); the district court denied the motion by Memorandum and Order dated May 21, 2008 (Doc. No. 750).

On June 2, 2008, after jury selection had begun, defendant's attorneys moved to withdraw as counsel, explaining that Adventure Outdoors had decided not to defend itself at trial. (Withdr. Mot.[3] at 1; Tr.[4] at 2, June 2, 2008). In an Order dated June 30, 2008 (Doc. No. 790), the district court noted a default by defendant, and on September 24, 2008, the Clerk of the Court entered a default. On September 30, 2008, plaintiff filed its motion for a default judgment, a redacted version of which was filed electronically on October 3, 2008 (Doc. No. 814). By Order dated October 2, 2008 (Doc. No. 822), the district court referred the motion to the undersigned for a Report and Recommendation, including findings of fact and law, if any, and the form of a decree to be issued by the district court. For the reasons set forth below, the Court respectfully recommends that the district court adopt the plaintiff's proposed findings of fact and conclusions of law as to Adventure Outdoors in their entirety and issue a decree as set forth below.

In addition, as explained below, the Court has reconsidered its September 3, 2008 Report and Recommendation regarding the City's motion for a default judgment against defendant Mickalis Pawn Shop, LLC ("Mickalis") and now respectfully recommends that an injunction issue regarding Mickalis containing the same terms as the Court recommends below as to

---

06 CV 6504 (JBW) (Oral Statement and Order, dated Aug. 21, 2008) at 7-10.

[3]Citations to "Withdr. Mot." refer to the Renzulli Law Firm, LLP's Motion to Withdraw as Counsel for Defendant Adventure Outdoors, filed June 2, 2008 (Doc. No. 764).

[4]Citations to "Tr." refer to the transcript of the Civil Cause for Order to Show Cause on May 21, 2008; the Transcript of Jury Selection on May 27, 2008; and the Transcript of Proceedings on June 2, 2008.

Adventure Outdoors.

## ADVENTURE OUTDOORS

### **I. Factual and Procedural Background**

Plaintiff, in its Amended Complaint, alleges that "thousands of handguns" have made

their way to New York City and into the possession of individuals who are prohibited by law

from owning firearms. (Am. Compl. ¶ 2). These individuals often obtain handguns "directly or

indirectly" from licensed firearms dealers who engage in illegal firearms sales practices, namely,

so-called "straw purchases," in which a legal purchaser of a firearm immediately transfers

possession of the firearm to an individual prohibited by law from possessing firearms. (Id. ¶¶ 2,

22, 58-63). Plaintiff notes that the New York State legislature has declared that illegally

possessed handguns are a public nuisance and asserts that the criminal proclivity of individuals

barred from possessing handguns creates a "common law public nuisance – a condition that is

injurious to the property, health, safety and comfort of a considerable number of persons." (Id.

¶ 3). Indeed, plaintiff cites numerous incidents in which individuals in New York City have been

injured or killed by illegally possessed handguns, including handguns sold by defendant

Adventure Outdoors. (Id. ¶¶ 4, 6, 98-103).

Plaintiff asserts that between 1994 and 2001, 21 firearms sold by Adventure Outdoors,

many of which were seized from illegal possessors and/or had been used in connection with

crimes, were recovered in New York City, notwithstanding the fact that Adventure Outdoors is

located approximately 800 miles from New York. (Id. ¶ 99).[5] The specific crimes in New York City involving handguns from Adventure Outdoors include: (1) a 1996 Manhattan shooting of a man in the face by another man with a handgun; (2) a 1996 robbery of a Manhattan store by two men, one of whom used a gun to threaten and pistol-whip a store clerk; (3) a 1998 incident in the Bronx in which a man threatened another man with a gun; (4) a 2001 incident in Queens in which a man was arrested for firing a handgun into the air; and (5) a 2001 Queens incident in which, following reports of at least four gun shots fired, police arrested a man for possession of a loaded handgun. (Id. ¶ 100). Plaintiff asserts that in each of these instances, the firearm used originated from Adventure Outdoors. Plaintiff also notes that the average "time to crime" – that is, the "interval between the retail sale of a gun and its recovery in a crime" (id. ¶ 57) – of the firearms sold by Adventure Outdoors and recovered in New York City is 3.5 years, compared to a time to crime average of 6 years for all guns recovered in New York City in connection with crimes. (Id. ¶ 102). In addition, plaintiff alleges that many of the handguns sold by Adventure Outdoors and recovered in New York City were "Saturday night specials" – i.e., "cheap, poorly made handguns favored by criminals." (Id. ¶ 103). The district court, in its August 15, 2007 Order denying the moving defendants' motion to dismiss, described Adventure Outdoors as "a preferred destination for straw purchasers." City of New York v. A-1 Jewelry & Pawn, Inc., 501

---

[5]The City further indicates that a number of additional firearms were recovered which were sold by defendant between 2000 and 2007. (Proposed Findings of Fact and Conclusions of Law in Support of Entry of a Default Judgment Against Adventure Outdoors, Inc., submitted September 30, 2008, ¶ 28; see also Affidavit in Support of Plaintiff the City of New York's Motion for Entry of a Default Judgment Against Defendant Adventure Outdoors, Inc., signed by Eric Proshansky and submitted September 30, 2008 ("Proshansky Aff."), ¶ 12, Ex. 13a). The Court notes that the Proposed Findings document is divided into "Findings of Fact" and "Conclusions of Law," and the Court refers to these two sections hereinafter as "Pl.'s Prop. Find." and "Pl.'s Prop. Conc."

F. Supp. 2d at 398.

Prior to the filing of plaintiff's Complaint, the City retained investigators to test defendant's willingness to participate in straw purchases. As set forth in plaintiff's Amended Complaint, these investigators successfully simulated a straw purchase at the Adventure Outdoors store in Smyrna, Georgia, on or about April 8, 2006. (Am. Compl. ¶¶ 93-94). The City indicates that when these and other investigators attempted to simulate a straw purchase at other firearms dealers' places of business, many of these dealers "unequivocally identified the . . . scenario . . . as an attempted straw purchase" and some refused to complete the sale. (Id. ¶ 95). The City has also identified 15 prosecutions of individuals who engaged in actual straw purchases of handguns sold by Adventure Outdoors and suggests that "it can reasonably be inferred" that defendant engaged in numerous other straw sales for which the City did not find related prosecutions. (Pl.'s Prop. Find. ¶ 14; Proshansky Aff. ¶ 21).

The City asserts that Adventure Outdoors has received information about straw purchases from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and thus should have recognized the simulated straw purchase as illegal. (See Am. Compl. ¶¶ 271-73). In addition, a former employee of Adventure Outdoors testified in depositions that defendant did not train her in how to recognize straw purchases and that, "based on her training, if she was suspicious of a gun purchaser but the purchaser passed a background check, she made the sale anyway." (Pl.'s Prop. Find. ¶ 7; Proshansky Aff. Ex. 2).

The City also alleges that defendant should have been on notice that handguns it sold had been recovered in crimes, since ATF often contacts firearms dealers for details concerning the sale of a recovered handgun. (Id. ¶ 270). Indeed, discovery in this case revealed that between

2000 and 2006, ATF traced at least 183 firearms sold by Adventure Outdoors. (Pl.'s Prop. Find. ¶ 27). Furthermore, ATF sent Adventure Outdoors a "demand letter," which is "a letter issued to firearms dealers who have ten (now 15) or more crime guns traced annually with times-to-crime of three years or less." (Id. ¶ 30; Proshansky Aff. Ex. 9).

Following denial of defendant's motions to dismiss, trial preparations proceeded through May 2008, including the filing of numerous motions *in limine* by both parties and an exchange of exhibit lists. On May 27, 2008, jury selection began. Prospective jurors were given questionnaires, and the completed questionnaires were to be examined by the parties over the following three days and a group of prospective jurors instructed to return on June 2, 2008. (See Tr. at 9-11, May 27, 2008). On that date, the parties appeared before the district court, and defendant's attorneys moved to withdraw as counsel. (Withdr. Mot.; Tr. at 2, June 2, 2008). Counsel explained that defendant had "decided that it does not intend to defend itself at a bench trial." (Withdr. Mot. at 1). Adventure Outdoors had objected to several of the district court's rulings, including the court's conclusion that it was sitting as a court of equity and thus was only permitted to employ an advisory jury, not a constitutional jury. (See Tr. at 54-56, May 21, 2008 (citing Fed. R. Civ. P. 39(c))). According to counsel's motion, Adventure Outdoors felt that defending itself at trial would be a "futile exercise" and preferred instead "to appeal from any default judgment that may be entered against it." (Withdr. Mot. at 1).

The court noted that defendant's refusal to proceed would constitute a default (Tr. at 7, June 2, 2008), and the City requested that a default judgment be entered. (Id. at 18). The court provisionally denied the motion to withdraw, but allowed the parties an opportunity to submit briefs on the issues. (Id. at 6, 10, 13-15). Defendant's counsel filed a brief on June 16, 2008, and

reiterated that defendant had "made the difficult decision not to defend itself" at trial. (Withdr. Mem.[6] at 1). In an affidavit attached to counsel's brief, the president of Adventure Outdoors stated that he had "discharged Renzulli Law Firm as trial counsel for Adventure Outdoors based on my decision not to participate in a bench trial," and that "I do not want Renzulli Law Firm to further represent the interests of Adventure Outdoors before this court." (Aff. of Jay Wallace, dated June 16, 2008 ("Wallace Aff.")).

In an Order dated June 30, 2008 (Doc. No. 790), the district court noted a default by Adventure Outdoors, and on September 22, 2008, plaintiff filed a written motion for entry of default (Doc. No. 805). On September 24, 2008, the Clerk of the Court entered a default. On September 30, 2008, plaintiff filed its motion for a default judgment, a redacted version of which was filed electronically on October 3, 2008 (Doc. No. 814). Along with its motion, plaintiff filed its Proposed Findings of Fact and Conclusions of Law, a Proposed Order Granting Injunctive Relief ("Pl.'s Prop. Order"), and a Memorandum of Law in Support of Plaintiff the City of New York's Motion for Entry of a Default Judgment ("Pl.'s Mem."). Plaintiff's Proposed Findings of Fact include information relating to, among other things, straw purchases and other violations of federal firearms laws occurring at Adventure Outdoors, trace requests received from ATF, firearms sold by defendant and recovered in New York City, and crimes involving those firearms. (Pl.'s Prop. Find. ¶¶ 1-41). The Proposed Conclusions of Law include: (1) a public nuisance in the form of a large number of illegally possessed firearms exists in New York City; (2) Adventure Outdoors has contributed to the existence and maintenance of this nuisance by

---

[6]Citations to "Withdr. Mem." refer to the Renzulli Law Firm, LLP's Memorandum of Law in Further Support of its Motion to Withdraw as Counsel for Defendant Adventure Outdoors, filed June 16, 2008 (Doc. No. 780).

engaging in straw purchases; (3) Adventure Outdoors has violated or aided and abetted violations of federal firearms laws; (4) defendant does not adequately train employees to recognize straw purchases; (5) Adventure Outdoors "*de facto* serves a New York market" because the guns it sells to straw purchasers "are repeatedly, and quickly, trafficked to New York City"; and (5) defendant's "indifference to established indicators of straw purchasing" demonstrates that defendant will continue to engage in this conduct unless a permanent injunction issues requiring defendant "to engage in certain remedial measures." (Pl.'s Prop. Conc. ¶¶ 1-6).

By Order dated October 2, 2008 (Doc. No. 822), the district court referred the motion to the undersigned for a Report and Recommendation, including findings of fact and law, if any, and the form of a decree to be issued by the district court. By Order dated September 25, 2008, this Court directed defendant to submit any papers in opposition to plaintiff's motion by October 24, 2008, and on October 23, 2008, the Court extended this deadline at defendant's request by two weeks. On November 8, 2008, defendant submitted a Memorandum of Law in Opposition to the City's Motion for the Entry of Default Judgment ("Def.'s Mem."), Proposed Findings of Fact and Conclusions of Law ("Def.'s Prop. Find." and "Def.'s Prop. Conc."), and the Declaration of Scott C. Allan in Support of Adventure Outdoors, Inc.'s Proposed Findings of Fact and Conclusions of Law ("Allan Decl.").[7] Defendant argues that "the City is not entitled to the entry of default judgment against Adventure Outdoors simply because it chose not to defend itself at a bench trial." (Def.'s Mem. at 3). Rather, defendant contends, because Adventure Outdoors filed

---

[7]The Allan Declaration and its voluminous exhibits were not filed electronically, as required by the rules of this district. (See Administrative Order 2004-08). Although in general the Court only considers materials submitted in compliance with the local rules, the Court here has departed from its usual practice and has reviewed the Allan Declaration and its exhibits in preparing this Report and Recommendation.

an Answer to plaintiff's Amended Complaint and participated fully in discovery, the City is obligated to prove its claims by clear and convincing evidence at a trial, whether the defendant participates or not. (Id. at 3, 7).

Defendant's proposed findings of fact state, among other things, that: defendant sells handguns only to Georgia residents (Def.'s Prop. Find. ¶ 4); only a small percentage of guns sold by Adventure Outdoors are Saturday night specials (id. ¶ 7-8); defendant has sales procedures in place and trains its employees to prevent straw purchases (id. ¶ 9-12); defendant has never knowingly sold a firearm to a straw purchaser or an individual prohibited by law from owning a firearm, except as part of an ATF sting operation (id. ¶ 15); and the ATF considered defendant an exemplary dealer (id. ¶ 16). Defendant's proposed findings also suggest that the trace requests and straw-purchase prosecutions identified by plaintiff do not suggest wrongdoing by Adventure Outdoors. Defendant's lengthy proposed conclusions of law include, among other things, that: this Court does not have personal jurisdiction over defendant (Def.'s Prop. Conc. ¶¶ 8-31); plaintiff's Amended Complaint has failed to state a cause of action on which relief may be granted (id. ¶¶ 32-49); plaintiff's claims are barred by the PLCAA (id. ¶¶ 50-66); defendant's failure to defend itself at trial does not entitle plaintiff to a default judgment (id. ¶ 2); and plaintiff must prove its claims by clear and convincing evidence and using only evidence which would be admissible at trial. (Id. ¶ 3, 6).

On November 24, 2008, with the permission of the Court, the City submitted a Reply Memorandum in Support of Entry of Default Judgment ("Pl.'s Rep."). The City attacks defendant's arguments as advancing "the radical and completely unsupported proposition that a defendant may successfully defend against liability by simply walking away from legal

proceedings whenever it wishes." (Pl.'s Rep. at 2). Plaintiff contends that a default judgment is appropriate in this case because Adventure Outdoors refused to proceed to trial and that once it defaulted, defendant may not contest issues of liability in this proceeding. (Id.)

## II. Discussion

A. Default Judgment

    1. Standards

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). "The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case. See id.; Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default"). After a default has been entered against a party, if that party fails to move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). If further investigation or evidence is necessary in order for default judgment to be entered, the court may conduct a hearing. See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95.

Here, during proceedings before the district court on June 2, 2008, the defendant refused to proceed with trial. (Tr. at 11, June 2, 2008). The district court at that time made it clear that such a refusal would constitute a default. (Id. at 7). With the consent of Adventure Outdoors,

defendant's counsel moved to withdraw, and the president of Adventure Outdoors stated that he had decided "not to participate in a bench trial" and that "I do not want Renzulli Law Firm to further represent the interests of Adventure Outdoors before this court." (Wallace Aff.). See Oscar De La Renta Ltd. v. Strelitz Ltd., No. 92 CV 3907, 1993 WL 267341, at *1 (S.D.N.Y. July 12, 1993) (finding defendant corporation in default where counsel had been discharged in light of defendant's decision not to defend the case).[8]

Thereafter, plaintiff moved for entry of default on September 22, 2008. The Clerk of the Court entered a default on September 24, 2008, and the City subsequently moved for default judgment, submitting detailed papers in support of its motion, on September 30, 2008. This Court, by Order dated September 25, 2008, provided defendant Adventure Outdoors with the opportunity to respond to plaintiff's motion and reserved determination of whether a hearing was necessary pending receipt of any submission from defendant. As described above, the Court received opposition papers from defendant on November 8, 2008. Plaintiff, by reply filed November 24, 2008, addressed the arguments raised by defendant. The Court, having reviewed the parties' submissions, finds that a hearing is not necessary.

2. Defendant's Objections to Default

It is clear that Adventure Outdoors is in default for refusing to proceed to trial as

---

[8]In addition to announcing its intention not to defend at trial, Adventure Outdoors sought to dismiss its attorneys. Had the court granted the request and defendant not obtained new counsel, such an action would constitute a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel).

scheduled, despite adequate warning from the district court, and therefore, the clerk's entry of default was proper. While a party may move to set aside the clerk's entry of default under Rule 55(c), defendant has not moved to vacate the default,[9] but instead opposes entry of a default judgment under Rule 55(b), arguing primarily that the clerk's entry of default was improper under Rule 55(a).

Defendant notes that Rule 55(a) provides for entry of a default where a party "has failed to plead or otherwise defend." Since Adventure Outdoors filed a timely response to the City's Complaint in the form of its Motion to Dismiss filed on August 8, 2006, and its Answer filed on January 3, 2008, it clearly did not fail to plead in response to the complaint and therefore, defendant contends, Rule 55(a) does not apply. Defendant argues that the phrase "otherwise defend" applies only to "'a motion directed to the sufficiency of the complaint'" and therefore does not apply here. (Def.'s Mem. at 2 (quoting 46 Am. Jur. 2d Judgments § 258)).

In support of this proposition, defendant relies primarily on the 1949 Fifth Circuit case of Bass v. Hoagland, 172 F.2d 205 (5th Cir. 1949). In Bass, the defendant in a personal injury action appeared through counsel and filed an answer, but for reasons that the record did not make clear, his counsel subsequently withdrew. Id. at 207-08. The case was scheduled for trial, the defendant failed to appear, and the court found him to be in default. Id. at 208. On appeal from a decision enforcing the judgment, a divided panel of the Fifth Circuit held that the procedures followed by the district court in entering the default judgment did not accord the defendant due

---

[9]In any event, such a motion to set aside the default is more properly addressed to the district court, not in the course of opposing the entry of a default judgment before the undersigned. Even if defendant's submission was construed as a request under Rule 55(c) to set aside the entry of default, it would likely fail for the reasons stated herein.

process of law because the defendant was completely unaware that a trial was taking place. Id. at 209-10. In the course of its analysis, the court commented that in the language of Rule 55, "'otherwise defend' refer[s] to attacks on the service, or motions to dismiss, or for better particulars, and the like, which may prevent default without presently pleading to the merits." Id. at 210.[10]

Relying on this dicta in Bass, defendant Adventure Outdoors now argues that a default may not be entered in this case because Adventure Outdoors did respond to the Complaint and therefore, plaintiff must be forced to prove its claims in a trial even if the defendant has no intention of appearing or defending against the claims.[11] Apart from the fact that Bass does not require this conclusion, the interpretation of Rule 55 offered by the court in Bass is not the law in the Second Circuit. See Brock v. Unique Racquetball & Health Clubs, 786 F.2d 61 (2d Cir. 1986); see also Cotton v. Slone, 4 F.3d 176 (2d Cir. 1993) (affirming default judgment where defendant had actively litigated case for three years but violated district court's order by failing to submit a pretrial memorandum); Fine Shoe Co. v. Buckray, Inc., 131 F.R.D. 58, 59 (S.D.N.Y. 1990) (noting that "[i]t is appropriate for a district court to declare a default when a party and its counsel fail to appear at trial after receiving notice"). In fact, Bass appears to represent a minority view. See Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 917-18 (3d Cir. 1992) (following broad interpretation of "otherwise defend" and citing cases from several circuits).

---

[10]Defendant also notes that the authors of the Wright & Miller treatise prefer this interpretation. See Wright, Miller & Kane, supra, § 2682.

[11]Defendant has cited no direct authority to support its claim that even though a defendant fails to appear for trial or refuses to defend at trial, the court is without authority to enter a default and must force the other side to present the entirety of its case.

14

In Brock, the Second Circuit affirmed the district court's finding of a default under Rule 55 where the defendants failed to appear for the resumption of a trial which had been interrupted at their behest. In this context, the court concluded, "a trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose the sanction of default for non-attendance occurring after a trial has begun." Brock v. Unique Racquetball & Health Clubs, 786 F.2d at 64. Defendant cites Brock in an apparent effort to spin the decision as providing support for the opposite point of view because the district court allowed the plaintiff to present additional evidence after the defendants failed to appear. (Def.'s Mem. at 5). However, the Second Circuit opinion made it clear that the default was entered prior to such testimony, immediately upon the defendants' failure to appear and that the district court was permitted to take such testimony in the absence of the notice required by Rule 55(b)(2)[12] because the trial had already begun and the witnesses were present. Brock v. Unique Racquetball & Health Clubs, 786 F.2d at 65.

It is clear that the court in Bass was concerned that a defendant without counsel not be held in default for a failure to appear for trial when the defendant had no notice that trial was proceeding. In this case, by contrast, far from being unaware of the pending trial, Adventure Outdoors' principal actually made arrangements to attend the trial before changing his mind and stating unequivocally that he did not wish to defend the action at trial. (Wallace Aff.). Further, defendant has explicitly stated that it stands by its decision and "still does not intend to present a

---

[12]Rule 55(b)(2) provides that where a party applies to the court for a default judgment and the court schedules a hearing to determine damages or any other matter, "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing." Fed. R. Civ. P. 55(b)(2).

15

defense at a bench trial if one is conducted." (Def.'s Mem. at 7 n.3).

Defendant also points to the procedures outlined in Local Rules 55.1 and 55.2 in support of its argument. Local Rule 55.1 directs a party requesting entry of default to "submit an affidavit showing . . . that the [opposing] party has failed to plead or otherwise defend the action . . . [and] that the *pleading to which no response has been made* was properly served." Local Rule 55.1 (emphasis added). Defendant contends that the latter clause in this rule demonstrates that the failure to respond to a pleading is the only possible ground for an entry of default.[13] (Def.'s Mem. at 2). However, defendant ignores the language of Rule 37(b)(2)(A)(vi) which provides that a party who fails to obey an order to provide discovery faces the possible sanction of an order "rendering a default judgment against the disobedient party." Clearly, if a court can find a party in default for failing to produce a document during discovery, the flouting of a court order to appear for trial provides grounds for entry of a default against the party choosing not to defend.

Accordingly, in the absence of any basis on which to vacate the default previously entered by the district court, the Court now turns to the relevant factors to be assessed in a motion for default judgment.

3. Application

In determining whether a default judgment should enter, courts have cautioned that a

---

[13] A more appropriate reading of the whole rule makes it clear that the it is not intended to limit the scope of Rule 55(a) of the Federal Rules of Civil Procedure but simply streamlines the administration of Rule 55(a), explicitly addressing a failure to respond to a pleading, which is by far the most common situation giving rise to entry of default in this district. See Brock v. Unique Racquetball & Health Clubs, 786 F.2d at 64 (describing the "typical Rule 55 case" as one "in which a default has entered because a defendant failed to file a timely answer").

default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and]. . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. at 95-96. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice," and ordering an inquest to determine damages).

The court possesses significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *1-2 (S.D.N.Y. Oct. 19, 1992). The greater the amount of money involved, the less justification there may be for entering the default judgment. See id. Additionally, a court may consider whether material issues of fact remain, see United States v. Farese, No. 80 CR 63, 1987 WL 28830, at *1 n.2 (S.D.N.Y. Dec. 15, 1987), whether the facts alleged in the complaint state a valid cause of action, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981), whether plaintiff has been substantially prejudiced by the delay involved, see Arthur F. Williams, Inc. v. Helbig, 208 F.R.D. 41, 48 (E.D.N.Y. 2002), and how

17

harsh the effect of a default judgment might be on the defendant. Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 10A Federal Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

Plaintiff asserts that the balance of the factors weighs heavily in favor of entry of a default judgment, arguing that: (1) no money damages are sought; (2) no real issue of fact remains; (3) defendant made an informed and strategic decision to default; (4) the City has been prejudiced by defendant's two-year opposition to the injunctive relief sought, while the nuisance "continu[ed] unabated as a result;" and (5) the effects of a default judgment are not harsh, given that the relief sought is largely the same as that voluntarily agreed to by the numerous settling defendants. (Pl.'s Mem. at 5-7).

Plaintiff further argues that the facts, as alleged in the Amended Complaint and further developed during discovery, establish that a public nuisance exists in New York City and that Adventure Outdoors has contributed to that nuisance. The City first asserts that "illegal guns impair the health and safety of a considerable number of persons in the City," citing the thousands of violent crimes, including homicides, involving illegally possessed guns in New York City. (Id. at 10). These incidents, plaintiff maintains, easily constitute a public nuisance, which is an offense against the State defined as "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all . . . in a manner such as to offend public morals, interfere with the use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." (Id. at 9 (citing Copart Indus. Inc. v. Consol. Edison Co. of New York, 41 N.Y.2d 564, 568, 362 N.E.2d 968, 971, 394 N.Y.S.2d 169, 172 (1977))).

Next, plaintiff describes the conduct that contributes to this asserted public nuisance,

beginning with certain documented sales practices. In addition to straw purchases, "a high-risk sales practice that is a well-recognized source of illegally trafficked guns" (id. at 11 (citing City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d at 377)), plaintiff describes sales of multiple handguns at one time to one purchaser, and sales of so-called Saturday Night Specials. (Id.) All of these practices were found to be risky by the district court. (Id.) Plaintiff asserts that although it is often difficult to demonstrate directly that a firearms dealer engages in these practices, certain useful indicators exist to this end: (1) the number of guns sold by a dealer that are recovered in connection with crimes, (2) the "time to crime" for those guns, and (3) incidents of straw purchases at a dealer's store, as indicated by prosecutions of the dealer's customers for engaging in such purchases. (Id. at 11-12).

Plaintiff then argues that there is clear and convincing evidence in this case that establishes that Adventure Outdoors has contributed to the public nuisance of illegally possessed firearms in New York City. (Id. at 13). Plaintiff refers the Court to the number of guns sold by defendant and recovered in New York City, defendant's short time to crime, the fact that the serial numbers on some of the recovered guns had been defaced, and the fact that some of these guns were "Saturday night specials." (Id. (citing Am. Compl. ¶¶ 99-103)). In addition, plaintiff asserts that discovery in this case revealed further indications of defendant's contribution to the nuisance, in the form of additional traced firearms, a significant number of ATF trace requests directed to defendant, and the ATF demand letter to defendant. (Id. at 14-15).

Plaintiff points to evidence that straw purchases were common practice at Adventure Outdoors. The City has identified fifteen recent prosecutions of defendant's customers in connection with straw purchases made at the store. (Id. at 22-23). One customer in deposition

testimony described in detail her experience making a straw purchase at the store, and strongly suggested that the store clerk was aware of the nature of the purchase but did not object. (Id. at 18-20). Further, defendant's president testified that the sale was "nothing out of the ordinary" (id. at 20), and a former Adventure Outdoors employee testified that defendant did not train her to identify and stop straw sales. (Id. at 17). Finally, document discovery revealed that a fair number of multiple sales occurred at defendant's store. (Id. at 21).

Although defendant attempts at some length to refute many of these facts in its Proposed Findings of Fact and Conclusions of Law as well as to deny any liability, because it has defaulted, it is not entitled to do so. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (gathering cases). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. Plaintiff is also entitled to "all reasonable inferences" from evidence offered in connection with the motion. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65

The Court finds that the relevant factors in this case support entry of a default judgment against defendant. The facts have been developed over the course of in-depth and hotly contested discovery, such that no material issue of fact remains unresolved at this point. In addition, as plaintiff notes, only an injunction is sought in this case, so the issue of money

damages is not a concern.[14] See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default). Finally, the potential harm to the City vastly outweighs any harm to defendant, which would essentially be required to engage in sales practices that comport with federal firearms laws.

The Court finds that a public nuisance exists in the form of illegally possessed firearms in New York City. See N.Y. Penal L. § 400.05(1). Furthermore, the Court finds that plaintiff has set forth more than sufficient evidence to demonstrate that defendant Adventure Outdoors engages in sales practices that contribute to this public nuisance. Indeed, the district court, when reviewing only the information contained in the Amended Complaint, found that "[t]his evidence documents, for each defendant, a decade-long, if not longer, practice of facilitating the illegal sale of guns for movement into the New York City market." City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d at 425. Discovery in this case revealed direct evidence of such practices by defendant, in the form of testimony by defendant's customers and a former employee suggesting that straw purchases were accepted at Adventure Outdoors, and of prosecutions of defendant's customers for engaging in straw purchases.

The Court finds that defendant Adventure Outdoors has failed to defend in this action and that plaintiff has established both the presence of a public nuisance in New York City and

---

[14]The Court notes that the terms of the Proposed Order require defendant to post a bond in the amount of $25,000; that penalties, if assessed, must be paid out of the bond (which then must be restored); and that certain costs and attorneys' fees incurred by the Special Master must be borne by defendant. (Proposed Order ¶¶ 10-12). Regardless of whether the terms of the Proposed Order are adopted in their entirety, these amounts, which do not constitute money damages, are insufficient alone to preclude entry of default judgment.

defendant's contribution to that nuisance. Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted.

In addition, the Court has thoroughly reviewed the plaintiff's Proposed Findings of Fact and the evidence submitted in support thereof and accordingly, respectfully recommends that plaintiff's Proposed Findings of Fact and Conclusions of Law, dated September 25, 2008, be adopted in their entirety.


B. Relief

Plaintiff requests injunctive relief in the form of a permanent injunction against Adventure Outdoors containing terms and conditions similar to those agreed to by the numerous settling defendants in this case. The specific terms are set forth in the City's Proposed Order submitted with its motion for default judgment. Plaintiff requests, inter alia, that: (1) a Special Master, whose fees and expenses are to be paid by defendant, be appointed for a period of at least five (5) years to monitor and train defendant to ensure defendant's compliance with applicable firearms laws; (2) the Special Master be granted the ability to employ a number of tools to ensure this compliance, including in-store observation, records monitoring, integrity testing, inventory inspection, and instructional programs; (3) any disputes about the Special Master's decisions regarding defendant's compliance with the injunction be resolved by the Special Master, with a right to review by the court, but a requirement that defendant pay the Special Master's costs and attorney's fees up to $10,000 if defendant's challenge is denied; (4) defendant be required to post a bond of $25,000; (5) in the event that defendant sells a firearm in violation of the law, defendant be required to forfeit from the bond $10,000 for the first violation, $15,000 for a

second violation, and $20,000 for a third violation, with the additional requirement that the bond be restored to its full amount after any violation. (Pl.'s Prop. Order).

As the City notes, the terms of the Proposed Order are largely similar to the terms to which the settling defendants agreed. There are three primary differences. First, for the settling defendants, the period of supervision by the Special Master is three years, not five as proposed for Adventure Outdoors. (See, e.g., Stipulation and Settlement Agreements between the City and Jim's Guns and Whatever, So Ordered by the district court on September 28, 2007 and between the City and Nancy Dailey d/b/a Peddler's Post, Gallery Distributing, Inc., and Woody's Pawn Shop, all So Ordered by the district court on April 29, 2008). Second, for the settling defendants, the City agreed to pay the Special Master's fees and expenses, whereas here, the City is asking to have the Special Master's fees and expenses paid by defendant. (Id.) Third, the fines established for the settling defendants in the event of a future violation are significantly lower than those proposed for Adventure Outdoors; for the first, second, and third violations, the fines for the settling defendants are $500, $1,000, and $1,500, respectively. (Id.)

Although, as discussed above, defendant attempts to contest its liability in this case and the appropriateness of default, it does not address in any detail the appropriateness of plaintiff's proposed remedy. Defendant's arguments as to whether an injunction should issue are limited to a few brief lines at the end of its Proposed Findings of Fact and Conclusions of Law claiming that the harm the City has alleged is not irreparable, that the relief sought is prohibited by the Due Process Clause "because it is an attempt to apply New York's penal laws to conduct in Georgia that is lawful under Georgia law," and that the terms of the proposed injunction are "unconstitutionally vague." (Def.'s Prop. Conc. ¶¶ 79-81). Defendant provides no support or

explanation for its statement that the alleged harm resulting from illegal guns is not irreparable or its view that the City's proposed injunction is vague, nor does it propose any alternative remedy. And as to defendant's argument regarding reference to New York's penal law, the district court has previously addressed this concern and concluded that violations of the penal law may properly constitute "evidence of a nuisance per se." City of New York v. A-1 Jewelry & Pawn, Inc., 247 F.R.D. 296, 355 (E.D.N.Y. 2007) (Doc. No. 402 at 114).

The Court finds defendant's objections to be without merit. First, the City asserts, and the Court finds, that the Proposed Order is consistent with the relief requested in plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 54(c) (requiring that a default judgment "not differ in kind from, or exceed in amount, what is demanded in the pleadings"). (See Am. Compl. at 74). As such, the relief requested is proper. Furthermore, the Court does not find that the Proposed Order is vague or confusing. Its terms are clear and explicitly set forth what constitutes the straw purchases in which defendant is to cease its involvement.

The City argues that a permanent injunction is the proper relief in this case, as it is "clearly appropriate to abate a public nuisance." (Pl.'s Mem. at 24 (citing New York State Nat'l Org. of Women v. Terry, 886 F.2d 1339, 1361-62 (1989) (finding that a permanent injunction properly issued against defendants' creation of a public nuisance))). The City further asserts that it has satisfied the requirements for a permanent injunction – irreparable harm and the absence of an adequate remedy at law. (Id. at 24-25). See New York State Nat'l Org. of Women v. Terry, 886 F.2d at 1362 (noting that "[g]enerally, to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted") (citing Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57 (1975)).

As to the first element, plaintiff argues that irreparable harm is "self-evident with respect to illegal gun possession and use in New York City . . . in the form of individual injuries and deaths, substantial law-enforcement and public-health costs, and the pervasive undermining of the effectiveness of, and respect for, New York's firearms[] laws and regulations." (Pl.'s Mem. at 25). Plaintiff then asserts that only injunctive relief is adequate, given the "forward-looking nature of the relief required," namely, the City's desire to prevent future incidents contributing to the public nuisance. (Id.) Furthermore, in its Proposed Conclusions of Law, which the Court has recommended be adopted in its entirety, the City states that "Adventure Outdoors' indifference to established indicators of straw purchasing, and its unwillingness to make changes to its sales practices on its own initiative despite numerous incidents of straw purchasing at its store, indicates that there is a reasonable likelihood that Adventure Outdoors will continue to engage in the conduct alleged in the Amended Complaint unless permanently enjoined therefrom and required to engage in certain remedial measures." (Pl.'s Prop. Conc. ¶ 5).

The Court finds that a permanent injunction is the proper relief to be awarded in this action. Plaintiff has established the irreparable harm stemming from the presence of illegally possessed firearms in New York City. Furthermore, money damages are clearly an inadequate remedy here, since fines could be assessed only after the harm has already occurred; such fines arguably would do little to prevent the harm from occurring in the first instance. In addition, the evidence indicates that there is little likelihood that defendant's sales practices will change in the near future. However, as to the terms of the requested injunction, the Court has examined considerations of equity and fairness and concludes that the terms previously agreed to by the other settling defendants should be sufficient to ensure defendant's adherence to sound sales

practices and to the terms of the Court's injunction. If significant violations of the injunction should occur, the City may apply to the Court for additional relief. Accordingly, the Court respectfully recommends that an injunction issue consistent with plaintiff's Proposed Order, with the following changes:

- Paragraph 2 should be amended to read as follows:

  An individual designated by the Court shall be appointed as Special Master. The Special Master will commence his or her monitoring and training responsibilities within 30 days of the date of this Injunction. The City will compensate the Special Master for his or her fees and expenses incurred in connection with the activities described herein.

- Paragraph 6 should be amended to read as follows:

  The Special Master may retain such experts and assistants as he or she deems reasonably necessary to carry out the above responsibilities, the cost of which shall be a part of the Special Master's expenses to be paid by the City.

- Paragraph 12 should be amended to read as follows:

  After the date of this Injunction, if Adventure Outdoors sells a firearm in a "Straw Purchase," or to an individual posing as a straw purchaser, or otherwise in violation of Federal, State or local law or regulation, as determined by the Special Master, $500 shall be forfeited to the City as a penalty. For a second violation, the amount to be forfeited shall be $1,000, and for a third violation, $1,500. Said amount shall become immediately payable to the City from the Bond, and the Bond shall be promptly restored to its full amount after any violation.

- And the first sentence of paragraph 17 should be amended to read as follows:

  The training and monitoring duties of the Special Master, and the requirement to maintain the Bond, shall terminate upon attainment by Adventure Outdoors of three (3) consecutive years from the date of the posting of the Bond of full compliance by Adventure Outdoors and each of its owners, employees and agents, with

applicable firearms laws and regulations and with the terms of the Injunction (the "Compliance Period").

## MICKALIS

On September 3, 2008, this Court issued a Report and Recommendation regarding the City's motion for a default judgment as to defendant Mickalis. In that Report, this Court receommended the imposition of the more stringent penalties requested by the City. Upon further reflection and recognizing that the considerations surrounding the City's requested relief as to Mickalis are substantially the same as those relating to Adventure Outdoors, the Court now withdraws its earlier Recommendation and respectfully recommends that an injunction issue as to Mickalis having the same terms as the Court recommends herein as to Adventure Outdoors. In addition, the Court notes that by letter dated January 12, 2009, the City requested that an additional paragraph regarding a recent guilty plea by Mickalis's principal be added to the Findings of Fact adopted by the district court as to Mickalis on September 17, 2008. By Order dated January 13, 2009, the district court denied the City's request, noting that no amendment to the Findings of Fact is necessary.

## CONCLUSION

The Court respectfully recommends that default judgment be entered against defendant Adventure Outdoors and that plaintiff's Proposed Findings of Fact and Conclusions of Law be adopted in their entirety. The Court further recommends that a permanent injunction issue against defendant Adventure Outdoors consistent with the terms of plaintiff's Proposed Order

Granting Injunctive Relief, subject to the modifications set forth above. Additionally, the Court recommends that a similar permanent injunction issue against defendant Mickalis.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 27, 2008

Cheryl L. Pollak
United States Magistrate Judge