**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ x

THE CITY OF NEW YORK,

                                                Plaintiff,

                  -against-                        06 CV 2233 (JBW) (CLP)

A-1 JEWELRY & PAWN, INC.; ADVENTURE OUTDOORS, INC.; COLE'S GUN SHOP, INC.; DUNKELBERGER'S SPORTS OUTFITTERS; GALLERY DISTRIBUTING INC.; GREG L. DRIGGERS d/b/a AAA Gun & Pawn Brokers; THE GUN STORE, INC.; HAROLD W. BABCOCK, JR. d/b/a Webb's Sporting Goods; JAMES THOMAS FARMER d/b/a Jim's Guns and Whatever; MICKALIS PAWN SHOP, LLC; NANCY DAILEY d/b/a Peddler's Post; OLD DOMINION GUNS & TACKLE, INC.; PATRIOT SERVICES, INC.; VIRGINIA FIREARMS & TRANSFERS, INC.; WELSH PAWN SHOP, INC. d/b/a Big Tom's Pawn Shop; and WOODROW C. HOLMAN III d/b/a Woody's Pawn Shop,

                                                Defendants.

------------------------------------------------------------------------ x

## ORDER OF THE SPECIAL MASTER

ANDREW WEISSMANN, Special Master:

      Pursuant to the Stipulation and Settlement Agreement entered into by Nancy Dailey d/b/a Peddler's Post, 219 Draper Street, Washington Court House, Ohio ("Peddler's Post"), and The City of New York (the "City"), and so ordered by the Honorable Jack B. Weinstein (the "Settlement Agreement"), on February 18, 2011, I conducted a telephone hearing with the parties. Aaron and Nancy Dailey attended on behalf of Peddler's Post and Eric Proshansky and Ari Biernoff attended on behalf of the City.

      I make the following findings and conclusions.

1

## FINDINGS OF FACT

### The Settlement Agreement

Among other things, the Settlement Agreement provides in paragraph three that Peddler's Post is required to "(i) comply with all applicable laws and regulations pertaining to firearms sales; (ii) comply with the terms of the Settlement Agreement; and (iii) cooperate fully with the Special Master's monitorship."

Paragraph four of the Settlement Agreement provides that, in monitoring Peddler's Post, the Special Master "shall be permitted to use all means within his discretion to conduct his monitorship, including, but not limited to," *inter alia*, "records monitoring" and "inspection of inventory."

### The Peddler's Post and Caesar's Creek Federal Firearms Licenses ("FFLs")

Peddler's Post is licensed by the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") to engage in the business of dealing in firearms from its premises at 219 Draper Street, Washington Court House, Ohio. The proprietors of Peddler's Post, Aaron and Nancy Dailey, were previously licensed by ATF to deal in firearms from Caesar's Creek Market in Wilmington, Ohio ("Caesar's Creek"). On October 13, 2008, however, ATF revoked the license to deal in firearms at Caesar's Creek. Although the Special Master was not provided a copy of the revocation notice by ATF, Mr. Dailey told the Special Master that the revocation was on account of recordkeeping violations.

As detailed in the Special Master's November 17, 2008 report for the period ending September 30, 2008, Mr. Dailey represented to the Special Master[1] that, after the ATF revocation for Caesar's Creek became effective, "he would not be selling any firearms from the Caesar's

---

[1] The Special Master worked throughout this monitorship with consultant Frank Napoli, a former ATF supervisor.

Creek location." And on April 7, 2010 Mr. Dailey represented to the Special Master that, since the time when his license at Caesar's Creek was revoked, he had not sold any firearms, including personal firearms, from that location.

### ATF's Notice of Denial of Peddler's Post Renewal Application

By Notice of Denial of Application for License dated August 2, 2009 ("Notice of Denial"), ATF notified Peddler's Post that it was denying its renewal application for its FFL. Thus, the current license is scheduled to expire on June 6, 2011. Three of the grounds in the Notice of Denial were based on allegations that, during the period from October 13, 2008 through January 2009, Peddler' Post transferred approximately 59 firearms to Mr. Dailey, who subsequently sold those firearms without adequate transactions records at Caesar's Creek, an unlicensed location.

### Initial Investigation of Circumstances of the Denial

On December 7, 2010, the Special Master spoke by phone with Ms. Dailey about the grounds set forth in ATF's Notice of Denial. Ms. Dailey stated that she believed that the only guns sold at Caesar's Creek during the period covered by the Notice of Denial had been from Mr. Dailey's personal collection. She stated that the guns were probably from Peddler's Post originally, but that many of them were kept for a year before being sold. She stated that Mr. Dailey was in the hospital during this period, which might account for any errors in connection with these sales. She also stated that an ATF agent had informed the Daileys that they were no longer permitted to sell guns at Caesar's Creek.

Later that same day, the Special Master spoke by phone with Mr. Dailey about the grounds set forth in ATF's Notice of Denial. In contradiction to his prior representations that he did not sell guns at Caesar's Creek following the license revocation, Mr. Dailey stated that he

had sold guns at Caesar's Creek. He stated that when he lost his license at Caesar's Creek, he transferred the guns at that location to his personal collection. Mr. Dailey stated that he personally had customers at that location complete the ATF Form 4473 for each sale since October 2008. Mr. Dailey also represented that the guns sold at Caesar's Creek originated from Peddler's Post, but that they were his personal guns. Mr. Dailey also conceded that, following the revocation of his license at Caesar's Creek, an ATF agent told him that he could not sell guns at that location. Mr. Dailey stated, however, that he never got a "definitive opinion" from this ATF agent about whether he could sell guns there.

### Inspection of Peddler's Post's Records on December 15-16, 2010

The Special Master conducted an examination of the records at Peddler's Post on December 15-16, 2010.

#### Acquisition & Disposition Book Review

On December 15-16, 2010, the Special Master examined the Acquisition & Disposition ("A&D") books of Peddler's Post. Additionally, Mr. Dailey provided the Special Master with his "personal" A&D books, as well as completed ATF Form 4473s reflecting the sales of firearms claimed to be from his personal collection.

The review of the these records identified recordkeeping violations by Peddler's Post. A review of the dates of transfer from Peddler's Post and subsequent sales at Caesar's Creek after October 13, 2008 indicates that Peddler's Post diverted firearms from Peddler's Post for sale at Caesar's Creek, an unlicensed location, in order to avoid compliance with federal law and the oversight of this monitorship.

During the period from October 13, 2008 through December 13, 2008, Peddler's Post, on 14 separate occasions, transferred a total of 66 firearms from the inventory of Peddler's Post to

Mr. Dailey's personal collection and subsequently sold 58[2] of these firearms at Caesar's Creek during the period from October 19, 2008 through April 18, 2009. In contrast to the representation by Ms. Dailey, the majority of the firearms sold by Peddler's Post at Caesar's Creek were sold within days of the transfer from Peddler's Post. All of the sales were within a year of the transfer. Eight firearms that Peddler's Post transferred to Mr. Dailey for sale at Caesar's Creek were subsequently transferred back to Peddler's Post – not to Mr. Dailey – and sold by Peddler's Post.

All but two of the sales at Caesar's Creek occurred prior to January 18, 2009, when an alleged theft of guns from Caesar's Creek was reported by Mr. Dailey to the local police department. Mr. Dailey did not report this theft to ATF, as required under 18 U.S.C. § 923(g)(6) and 27 C.F.R. § 478.39a.[3] This failure to report standing alone is not a separate ground for a violation herein, since I find that there is insufficient evidence that a theft occurred or that any allegedly stolen guns came originally from Peddler's Post.

The following chart reflects the transfer of firearms from Peddler's Post's inventory to Mr. Dailey and the subsequent disposition of these firearms:

---

[2] The number of sales identified by the Special Master, 58, differed from the approximate number identified in the ATF Notice of Denial, 59.

[3] Under 18 U.S.C. § 923(g)(6), "[e]ach licensee shall report the theft or loss of a firearm from the licensee's inventory or collection, within 48 hours after the theft or loss is discovered, to the Attorney General and to the appropriate local authorities." Under 27 C.F.R. § 478.39a:

> Each licensee shall report the theft or loss of a firearm from the licensee's inventory (including any firearm which has been transferred from the licensee's inventory to a personal collection and held as a personal firearm for at least 1 year), or from the collection of a licensed collector, within 48 hours after the theft or loss is discovered. Licensees shall report thefts or losses by telephoning 1-888-930-9275 (nationwide toll free number) and by preparing ATF Form 3310.11, Federal Firearms Licensee Theft/Loss Report, in accordance with the instructions on the form. The original of the report shall be forwarded to the office specified thereon, and Copy 1 shall be retained by the licensee as part of the licensee's permanent records. Theft or loss of any firearm shall also be reported to the appropriate local authorities.

| Date of Transfer from Peddler's Post | Transferee | Firearm | Serial No. | Date of Sale at Caesar's Creek or Return to Peddler's Post |
|---|---|---|---|---|
| 10/13/08 | Aaron Dailey | Maverick | MV54523J | 10/25/08 |
| 10/13/08 | Aaron Dailey | Jimenez | O92114 | 10/25/08 |
| 10/13/08 | Aaron Dailey | Jimenez | O90357 | 10/25/08 |
| 10/13/08 | Aaron Dailey | Jimenez | 1133071 | 10/26/08 |
| 10/13/08 | Aaron Dailey | Cobra | CTO54984 | 10/25/08 |
| 10/13/08 | Aaron Dailey | Phoenix | 4302272 | 10/25/08 |
| 10/13/08 | Aaron Dailey | Phoenix | 4302271 | Returned to Peddler's Post |
| 10/13/08 | Aaron Dailey | Cobray | M00022106 | 11/09/08 |
| 10/16/08 | Aaron Dailey | Ithaca | 425198 | 10/25/08 |
| 10/18/08 | Aaron Dailey | RRA AK-47 | H08101164 | 11/01/08 |
| 10/18/08 | Aaron Dailey | Century Arms | 1980KP4591 | 11/08/08 |
| 10/18/08 | Aaron Dailey | Remington | AB059437M | 10/19/08 |
| 10/31/08 | Aaron Dailey | HiPoint | P881773 | 01/04/09 |
| 10/31/08 | Aaron Dailey | HiPoint | P881774 | Returned to Peddler's Post |
| 10/31/08 | Aaron Dailey | HiPoint | P881777 | Returned to Peddler's Post |
| 11/01/08 | Aaron Dailey | Ruger | 125-24630 | 04/18/09 |
| 11/01/08 | Aaron Dailey | Taurus | TRE04323 | 11/02/08 |
| 11/01/08 | Aaron Dailey | Smith & Wesson | PDX0963 | 12/14/08 |
| 11/01/08 | Aaron Dailey | HiPoint | P1400992 | Returned to Peddler's Post |
| 11/01/08 | Aaron Dailey | HiPoint | P1400996 | 11/16/08 |
| 11/01/08 | Aaron Dailey | HiPoint | P1400998 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Smith & Wesson | C708771 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Ruger | 301-43655 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Cobray | M00022088 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Ruger | 370-62558 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Ruger | 370-62643 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Phoenix | 4306152 | 11/08/08 |
| 11/09/08 | Aaron Dailey | RAA AK-47 | H08100431 | 11/09/08 |
| 11/09/08 | Aaron Dailey | RAA AK-47 | H08161017 | 11/09/08 |
| 11/09/08 | Aaron Dailey | CIA-RR15 | JTM02330 | 11/09/08 |
| 11/09/08 | Aaron Dailey | Stevens | E7000080 | 11/09/08 |
| 11/16/08 | Aaron Dailey | Mossberg | H970157 | 11/22/08 |
| 11/16/08 | Aaron Dailey | Remington | 427886V | 11/16/08 |
| 11/16/08 | Aaron Dailey | Smith & Wesson | BAY6179 | 11/16/08 |
| 11/16/08 | Aaron Dailey | Beretta | BER062655M | 12/13/08 |
| 11/16/08 | Aaron Dailey | Czech | C05208 | 11/16/08 |
| 11/16/08 | Aaron Dailey | Walther | 9964BAK | 12/20/08 |
| 11/16/08 | Aaron Dailey | Ruger | 330-30244 | Returned to Peddler's Post |
| 11/16/08 | Aaron Dailey | Jimenez | 1129698 | 11/16/08 |
| 11/16/08 | Aaron Dailey | NEF | NT323089 | 02/14/09 |
| 11/22/08 | Aaron Dailey | High Standard | 566746622 | 11/22/08 |
| 11/22/08 | Aaron Dailey | Smith & Wesson | 34K5249 | 11/22/08 |
| 11/22/08 | Aaron Dailey | Ruger | 300-63978 | 11/22/08 |
| 11/23/08 | Aaron Dailey | Charter | 90459 | 11/23/08 |
| 11/23/08 | Aaron Dailey | Ruger | 313-03857 | 11/23/08 |
| 11/23/08 | Aaron Dailey | Grendel | 25715 | 11/25/08 |
| 11/23/08 | Aaron Dailey | Jimenez | O57147 | 11/23/08 |
| 11/23/08 | Aaron Dailey | Jimenez | O91651 | 11/23/08 |
| 11/30/08 | Aaron Dailey | Marlin | 17482839 | 01/17/09 |
| 11/30/08 | Aaron Dailey | Rossi | F282917 | 11/30/08 |
| 11/30/08 | Aaron Dailey | Jimenez | O89627 | 01/30/08 |

6

| 12/06/08 | Aaron Dailey | Heritage Arms | F63095 | 12/06/08 |
| 12/06/08 | Aaron Dailey | Ruger | 228-76558 | 12/06/08 |
| 12/06/08 | Aaron Dailey | Jimenez | O87304 | 12/06/08 |
| 12/07/08 | Aaron Dailey | Ruger | 664-75002 | Returned to Peddler's Post |
| 12/07/08 | Aaron Dailey | HiPoint | P1400990 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Phoenix | 4304544 | Returned to Peddler's Post |
| 12/13/08 | Aaron Dailey | Ruger | 195-30552 | 12/13/08 |
| 12/13/08 | Aaron Dailey | HiPoint | P1400987 | Returned to Peddler's Post |
| 12/13/08 | Aaron Dailey | HiPoint | P1415666 | 12/20/08 |
| 12/13/08 | Aaron Dailey | Ruger | 174-91724 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Ruger | 305-48427 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Taurus | BT648829 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Rock Island Armory | RIA1120558 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Charter | 69781 | 12/13/08 |
| 12/13/08 | Aaron Dailey | HiPoint | X4105168 | 12/14/08 |

The short time frame between the transfer of firearms from Peddler's Post to Mr. Dailey, and the subsequent sale of the firearms at Caesar's Creek evidences that the guns recorded by Peddler's Post as having been transferred to Mr. Dailey's personal collection were actually for sale at Caesar's Creek. That eight guns were transferred back to Peddler's Post, and not retained by Mr. Dailey, further evidences the falsity of the Peddler's Post records.

Peddler's Post also failed to conduct a background check on the individual purchaser with the National Instant Criminal Background Check System ("NICS") prior to the sale of any of these 58 firearms at Caesar's Creek. For the 58 firearms that Peddler's Post subsequently sold at Caesar's Creek, Mr. Dailey had the purchaser complete an ATF Form 4473 and obtained a driver's license from the purchaser. But the names of the purchasers of these firearms do not appear in Peddler's Post A&D books, as legally required. Further, Peddler's Post did not fill out an ATF Form 4473 on any of the fourteen occasions on which Peddler's Post recorded transfers of firearms to Mr. Dailey's personal collection.

## CONCLUSIONS OF LAW

The Settlement Order does not set forth the applicable standard the Special Master should use when determining whether a violation has occurred. Because the underlying lawsuit brought

against Peddler's Post by the City required a standard of proof of preponderance of the evidence, the Special Master has determined that the preponderance standard is appropriate when determining whether a violation of the Settlement Order has occurred. However, even if a standard of clear and convincing evidence were to apply, the Special Master would reach the same conclusions.

Based on the foregoing Findings of Fact, the Special Master concludes that Peddler's Post has committed the following violations of the Settlement Agreement as that term is defined by paragraph 8 of the Settlement Agreement.

### Illegal Sale of Firearms at Caesar's Creek

On fourteen occasions between October 13, 2008 and December 13, 2008, Peddler's Post recorded in its A&D books the disposition of 66 firearms to the personal collection of Mr. Dailey. Peddler's Post, through Mr. Dailey, subsequently sold 58 of these firearms at Caesar's Creek, a location at which the FFL had been revoked, as Peddler's Post knew. Pursuant to 27 C.F.R. § 478.41(b), an FFL "entitle[s] the licensee to . . . engage in the business specified by the license, at the location described on the license, and for the period stated on the license." *Id.* § 478.41(b); *see also id.* § 478.50 ("The license covers the class of business or the activity specified in the license at the address specified therein"). The circumstances of Peddler's Post's transfers of firearms to Mr. Dailey and their subsequent sale at Caesar's Creek evidence a clear intent to engage in the sale of firearms from an unlicensed, unmonitored location, as opposed to an intent to transfer firearms to Mr. Dailey's personal collection. Mr. Dailey served as a mere straw conduit for Peddler's Post.

Thus, Peddler's Post's recording of these guns as having been transferred to Mr. Dailey's personal collection – instead of recording each of these firearms as having been transferred to its

eventual purchaser – were in violation of federal recordkeeping requirements. *See* 27 C.F.R. § 478.121(c); 18 U.S.C. § 922(m); 27 C.F.R. § 478.125(e).[4] These provisions prohibit an FFL from knowingly making a false entry, or failing to make an appropriate entry in a required record. In addition, Peddler's Post's sale of 58 firearms at Caesar's Creek violated 18 U.S.C. § 922(t)(1) and 27 C.F.R. § 478.102(a),[5] which require a licensed seller to conduct a background check through the NICS system before completing the sale of a firearm.

I do not credit Peddler's Post's assertion that any of these violations were unintentional. To the contrary, I find that the scheme was deliberate. Mr. and Ms. Dailey stated at the hearing that Mr. Dailey was too ill to sell guns during the approximate time of the transfers at issue; however, Mr. Dailey previously told the Special Master that he sold the guns at Caesar's Creek. At the hearing, when again asked who sold the guns at issue at Caesar's Creek, Mr. Dailey said that he had not and could not explain how the guns came to be there. Ms. Dailey, by contrast, when asked what she knew about the sales, said that Mr. Dailey would know better than she

---

[4] Under 27 C.F.R. § 478.121(c), "[e]ach licensed importer, licensed manufacturer, licensed dealer, and licensed collector shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, whether temporary or permanent, of firearms and such records of the disposition of ammunition as the regulations contained in this part prescribe. Section 922(m) of the Act makes it unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain any such record."

Under 27 C.F.R. § 478.125(e), "[t]he sale or other disposition of a firearm shall be recorded by the licensed dealer not later than 7 days following the date of such transaction. . . . The record shall show the date of the sale or other disposition of each firearm, the name and address of the person to whom the firearm is transferred, or the name and license number of the person to whom transferred if such person is a licensee, or the firearms transaction record, Form 4473, serial number if the licensed dealer transferring the firearm serially numbers the Forms 4473 and files them numerically."

[5] 18 U.S.C. § 922(t)(1)(A) provides, in pertinent part, that "a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter . . . before the completion of the transfer, the licensee contacts the national instant criminal background check system." 27 C.F.R. § 478.102(a) provides, in pertinent part, that "a licensed importer, licensed manufacturer, or licensed dealer (the licensee) shall not sell, deliver, or transfer a firearm to any other person who is not licensed under this part . . . [b]efore the completion of the transfer, the licensee has contacted NICS."

9

about the circumstances of how the guns were sold at that location. I note that on January 18, 2009, Mr. Dailey was well enough to travel to Caesar's Creek to open the store, discover the alleged theft, and meet with police officers at that location. The police report reflects information provided directly from Mr. Dailey, including how he allegedly discovered the theft when he arrived at the store, at a time when Mr. Dailey says he was too ill to work.

The Special Master concludes that each of the 58 sales constitutes a violation as that term is defined under paragraph 8 of the Settlement Agreement in that Peddler's Post sold firearms "in violation of federal . . . law or regulation." *See United States v. Jackson*, 608 F.3d 193, 198 (4th Cir. 2010) (noting that, under 18 U.S.C. § 2(b), one "cannot do indirectly that which he is prohibited from doing directly"); 18 U.S.C. § 2(b) ("Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."). Because the separate NICS and 4473 violations were part and parcel of the same scheme – whereby Mr. Dailey served as a straw conduit to enable Peddler's Post to sell its guns at Caesar's Creek – I have not imposed separate violations for each law that was violated in connection with each firearm transfer and sale. Instead, each illegal transfer from Peddler's Post is counted as one violation, although it broke several firearms laws.

### Misrepresentation to the Special Master

On April 7, 2010, Mr. Dailey, on behalf of Peddler's Post, misrepresented to the Special Master that he had not sold any guns at Caesar's Creek following the expiration of the license for that location on October 17, 2008, when in fact Peddler's Post had sold guns at that location, in violation of paragraph 8 of the Settlement Agreement. *See* Settlement Agreement ¶ 12 (compliance requires absence of violation by "Ms. Dailey and each of her employees and agents acting in their capacity as employees and agents of Ms. Dailey"); *see also Rosenthal & Co. v.*

*Commodity Futures Trading Com'n*, 802 F.2d 963, 966 (7th Cir. 1986) (noting that "respondeat superior . . . makes an employer strictly liable . . . for torts committed by his employees in the furtherance of his business"). This misrepresentation constituted a violation as that term is defined under paragraph 8 of the Settlement Agreement in that, by misrepresenting its activities to the Special Master, Peddler's Post "failed to cooperate with the Special Master's monitorship." The City argues that a negligence standard applies to this provision, rather than an intent standard. The Special Master need not decide which standard applies, as I conclude that Peddler's Post failure to cooperate by misrepresenting activities at Caesar's Creek meets the knowing and intentional standard.

## PENALTIES

Each of the 58 sales of firearms at Peddler's Post constitutes a violation under the Settlement Agreement. The Special Master is required pursuant to paragraphs 8 and 10 of the Settlement Agreement to order that Peddler's Post pay a fine for each violation. The first violation carries a fine of $500 and the second carries a fine of $1,000. Each subsequent violation carries a fine of $1,500. The total penalty resulting from these 58 violations is $85,500. In addition, pursuant to paragraphs 8and 12 of the Settlement Agreement, the Special Master extends the monitorship until three years after the last of these violations. Since that violation was on April 18, 2009, the monitorship shall extend until April 18, 2012.

As a penalty for the fifty-ninth violation, for failure to cooperate, the Special Master is required pursuant to paragraphs 8, 10 and 12 of the Settlement Agreement to order that Peddler's Post pay a fine of $1,500 and order the extension of the monitorship to April 7, 2013, *i.e.* three years after Peddler's Post's violation.

Since the latest of all the violations is April 7, 2010, the monitorship shall be extended to three years after that date, or until April 7, 2013. The total penalties for these violations is $87,000.

## APPELLATE RIGHTS OF THE PARTIES

In accordance with paragraph 7 of the Settlement Order, "[a]ny party has the right to contest before the Court any decision or practice of the Special Master on the ground that the decision or practice is clearly erroneous."

Dated: February 19, 2011

_____
Special Master Andrew Weissmann