UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                            Plaintiff,

                    -against-

A-1 JEWELRY & PAWN, INC.; ADVENTURE
OUTDOORS, INC.; COLE'S GUN SHOP, INC.;
DUNKELBERGER'S       SPORTS      OUTFITTERS,
GALLERY DISTRIBUTING INC.; GREG L. DRIGGERS
d/b/a AAA Gun & Pawn Brokers; THE GUN STORE,
INC.; HAROLD W. BABCOCK, JR. d/b/a Webb's
Sporting Goods; JAMES THOMAS FARMER d/b/a Jim's
Guns and Whatever; MICKALIS PAWN SHOP, LLC;
NANCY DAILEY d/b/a Peddler's Post; OLD DOMINION
GUNS & TACKLE, INC.; PATRIOT SERVICES, INC.;
WELSH PAWN SHOP, INC. d/b/a Big Tom's Pawn Shop;
WOODROW C. HOLMAN III d/b/a Woody's Pawn Shop,

                                            Defendants.

-------------------------------------------------------------------- x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  NOV 2 9 2011  ★

BROOKLYN OFFICE

06 CV 2233 (JBW) (CLP)

## AMENDED SETTLEMENT AGREEMENT

        **WHEREAS**, plaintiff, The City of New York (the "City") commenced this action

on May 15, 2006, by filing a complaint against Nancy Dailey d/b/a Peddler's Post in the United

States District Court for the Eastern District of New York and by filing an Amended Complaint

on August 29, 2007;

        **WHEREAS**, Ms. Dailey was served with the Amended Complaint on August 29,

2007;

        **WHEREAS**, the City and Ms. Dailey entered into a Stipulation and Settlement

Agreement (the "Settlement Agreement") dated February 28, 2008, which was So Ordered by



the Court on April 29, 2008 (copy attached as Exhibit 1), providing, *inter alia*, for a court-appointed Special Master to monitor Ms. Dailey's firearms sales until at least February 22, 2011; and

WHEREAS, on February 19, 2011, the Special Master issued a final order (the "Order," copy attached as Exhibit 2) which determined, *inter alia*, that Ms. Dailey and her husband Aaron Dailey (the "Daileys") had engaged in firearms sales and other conduct in violation of the Settlement Agreement, and which unless modified, extends the monitorship of Ms. Dailey's firearms sales to April 7, 2013 and impose a fine of $87,000.00; and

WHEREAS, the Daileys' federal firearms license ("FFL") is expected to expire on or around July 11, 2011. The Daileys expect that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") will not renew the Dailey's FFL; and

WHEREAS, the parties intend the Special Master to continue during the Compliance Period (defined below) to monitor all firearms transferred to the Daileys as a result of the expiration of the Dailey's FFL, while excluding the Daileys' presently existing personal collection of firearms, as it exists on the date of this Amended Settlement Agreement, from such monitoring; and

WHEREAS, the parties desire to resolve all issues arising out of the Order, and incorporate that resolution into this Amended Settlement Agreement (the "Amended Agreement") , by agreement and without further litigation;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth below, the parties agree as follows:

1.    This Amended Agreement amends the Settlement Agreement.

2.     The signatories to the Amended Agreement are The City of New York, and the Daileys. For purposes of the Amended Agreement, the term "the Daileys" shall include Nancy Dailey individually, Aaron Dailey individually, and Nancy and Aaron Dailey jointly and d/b/a Peddler's Post.

3.     Whether or not the ATF renews the Daileys' FFL, the Daileys shall cease the sale of handguns, directly or indirectly, on or before 12:01 o'clock a.m., July 12, 2011, for a period of at least three years, subject to the exceptions detailed in Paragraphs 5, 6, 7, 8, 9 and 10 hereof. Should their current firearms license terminate, the Daileys will not attempt, either directly or indirectly, without the approval of the City, to obtain an FFL for a period of three years (or longer should law provide otherwise) from the date on which this Amended Agreement is fully executed.

4.     The Daileys shall promptly notify the Special Master and the City in writing as to the outcome of the ATF's decision regarding renewal of the Daileys' FFL and shall promptly provide the Special Master and the City with copies of any correspondence to or from the ATF regarding the license expiration/renewal.

5.     Should the Daileys find the means to dispose of all or part of the Inventoried Firearms (as defined below) to an FFL as permitted under federal, state and local law, they will promptly provide the Special Master and the City, in writing, with the name and FFL number of the individual or company that is to take possession of their inventory, and a copy of the inventory to be transferred.

6.     In the event that the Daileys remain federally licensed to sell firearms after July 11, 2011, any sale of long guns will be pursuant to federal, Ohio state and local laws and subject to the monitorship outlined below.

- 3 -

7.    Except for the right to continue to sell long guns pursuant to paragraph 6 hereof, or a sale or consignment of firearms to an FFL as provided in paragraph 5 hereof, the Daileys shall not be engaged in the business of selling firearms as that term is defined in 18 U.S.C. § 921(a)(21)(C) after July 11, 2011.

8.    Within five (5) days of  the complete execution of this Amended Settlement Agreement the Daileys  shall promptly provide to the Special Master and the City a written inventory of all firearms, including handguns, transferred to the Daileys' personal collection at the time the FFL held by the Daileys expires or is/was terminated, (the "Inventoried Firearms"). The "Inventoried Firearms" shall remain subject to the restrictions set forth herein and the oversight of the Special Master.  The Daileys shall be required to provide to the Special Master no less than twice per calendar year during the Compliance Period (as defined below) a summary of the Inventoried Firearms sold or otherwise transferred from the Daileys' personal collection, together with a statement under oath that all sales or transfers of Inventoried Firearms during the period complied with federal, Ohio state and local law and regulation and that all Inventoried Firearms not sold or transferred during the period remain in his possession.

9.    With respect to the Inventoried Firearms, the Daileys shall not knowingly, directly or indirectly (i) sell any firearm that is not from the Daileys' personal collection as that term is defined under federal, Ohio state or local law; (ii) sell more than two (2) handguns to the same individual during any thirty (30) day period; (iii) sell more than fifteen (15) handguns in any thirty day period; (iv) sell any handgun to an individual that the Daileys know or have reason to believe is a prohibited purchaser, including but not limited to straw purchasers; (v) sell any handgun to an individual without first verifying the person's age and state of residence by reviewing a driver's license or other state or federally issued identification and obtaining from

- 4 -

said person the information typically contained in ATF Form 4473; or (vi) knowingly sell any handgun to an individual that the Daileys know or have reason to believe will then transport the handgun out of state for re-sale.

10.    Except for the Inventoried Firearms, and subject to the proviso of paragraph 7 hereof that the Daileys shall not be engaged in the business of selling firearms as that term is defined in 18 U.S.C. § 921(a)(21)(C) after July 11, 2011, the Daileys may buy, sell or trade firearms, including handguns, from their now-existing personal collection as permitted by federal, Ohio state and local law and regulation without any restriction or oversight of the City or Special Master.

11.    Firearms sales made by the Daileys, if any, during the three year period commencing July 11, 2011 and terminating July 10, 2014 (the "Compliance Period), including but not limited to the Daileys' sale or transfer of Inventoried Firearms but excluding all other sales or transfers from the Daileys' personal collection, will be monitored by a Court-appointed Special Master.    With the exception of the Inventoried Firearms, the Special Master's monitorship shall not extend to the Daileys' sale of firearms from their personal firearms collection.

12.    Andrew Weissmann, Esq., has been appointed by the Court as Special Master for this matter. The Special Master will retain his monitoring and training responsibilities with respect to the Daileys except as set forth herein.   The City will compensate the Special Master for his fees and expenses incurred in connection with the activities described herein.

13.    During the Compliance Period (as that term is defined in paragraph 11 above), the Daileys are required to (i) comply with all applicable federal, Ohio state and local laws and regulations pertaining to firearm sales; (ii) refrain from selling handguns, except as

provided by this Amended Agreement; (iii) comply with the terms of this Amended Agreement; and (iv) cooperate fully with the Special Master's monitorship.

14.     It shall be the responsibility of the Special Master to ensure, to the fullest extent practicable, that from the date of this Amended Agreement forward until the end of the Compliance Period that the Daileys are in full compliance with this Amended Agreement.  The Special Master shall be permitted to use all means within his discretion to conduct his monitorship, including but not limited to: (i) in-store observation, including videotape surveillance; (ii) records monitoring; (iii) random and repeated integrity testing; (iv) inspection of in-store inventory; and (v) instructional programs designed to provide "best practices" sales training to the Daileys and their employees.  With respect to firearms, including handguns, subject to this Amended Agreement, the Special Master's duties are to ensure, to the fullest extent practicable, that any conveyances of firearms by the Daileys to another person or entity are made in full conformity with applicable law, regardless of whether those firearms are conveyed through federally licensed sales or otherwise.

15.     The Daileys agree that the Special Master's responsibilities require access to all documentation regarding Inventoried Firearms sales and inventory to the extent it exists at the time of the execution of this Amended Settlement Agreement, including, but not limited to, (i) acquisition and disposition books; (ii) ATF Forms 4473 (Firearm Sales Records); (iii) ATF Forms 3310.4 (Sale of Multiple Firearms Records); (iv) trace requests made by the ATF to the Daileys; and (v) computerized firearm customer and sales records.  The Daileys agree to make such records available without restriction to the Special Master.

16.     The Special Master shall report his findings to the parties at least twice per year going forward, and serve a copy of same upon the parties.  Such reports shall include a

determination of whether the Daileys have, to the knowledge of the Special Master, committed any Violations, as that term is defined in Paragraph 18 below.

17.     Any disagreement between the parties over any practice or decision of the Special Master, including without limitation a decision of the Special Master that a Violation has occurred, shall be submitted by the Special Master as a recommendation to the Court following the objection period defined below.  Any disagreement between the parties over any practice or decision of the Special Master, including without limitation a decision of the Special Master that a firearm sale has been made in violation of federal, Ohio state, or local laws or regulations, shall be resolved by the Special Master.  Any party has the right to contest before the Court any decision or practice of the Special Master on the ground that the decision or practice is clearly erroneous.  If the party filing such a contest does not succeed in vacating the Special Master's decision or practice as clearly erroneous, the contesting party shall pay the other party's attorney fees.

18.     For purposes of this Amended Agreement, a 'Violation" shall have occurred if, as determined by the Special Master or Court as the case may be, (i) the Daileys have sold a firearm to a "Straw Purchaser, as that term is defined below, or to an individual posing as a Straw Purchaser; (ii) the Daileys have otherwise sold a firearm in violation of law or regulation; or (iii) the Daileys have violated this Amended Agreement or failed to cooperate with the Special Master's monitorship.  The Special Master may, in his discretion, refer Violations to the Court for the imposition of contempt sanctions.

19.     The performance bond already posted by the Daileys shall remain on deposit with the court during the Compliance Period.  At the conclusion of the Compliance

- 7 -

Period the bond shall be released to the Daileys  if no Violation has been committed requiring use of the bond.

20.     For purposes of this Amended Agreement, a "Straw Purchase" shall have occurred if, as determined by the Special Master,

(i) any buyer is arrested for, indicted for, or pleads guilty to a violation of either 18 U.S.C. § 922(a)(6) or 924(a)(1)(A) arising from the sale by the Daileys on the grounds that such person made a false statement on ATF Form 4473 that such person was the "actual buyer" of the firearm sold, and a reasonable person would have recognized at the time of sale that a straw purchase was occurring

(ii) Review of videotapes or store records or other monitoring by the Special Master indicates that a Straw Purchase has occurred and that a reasonable person would have recognized at the time of sale that a straw purchase was occurring; or

(iii) A sale is made to an investigator who is conducting a "Simulated Straw Purchase," which shall mean a purchase in a form substantially like those described in the City's Amended Complaint, for example, in Amended Complaint paragraphs 234-236.

21.     After the date of this fully executed Amended Agreement, if a final determination has been made that during the Compliance Period a Violation has occurred, $1,000.00 shall be forfeited to the City as a penalty.  A "final determination" shall mean any recommendation or opinion of the Special Master that has been made in writing on a final basis and served upon the parties in accordance with the notice requirements provided in this Amended Agreement, and the time for filing an objection has expired and no objection has been filed with the Court, as well as any order of the Special Master which has not been successfully

challenged before the Court. A "final determination" shall also include any order of the Court which has been upheld over any objection or appeal of any party.

22.     In addition, a final determination of a Violation shall result in the Compliance Period of this Amended Agreement being extended for an additional term of three years from the date of such Violation, or the date of the last such violation in the case of multiple Violations. The Compliance Period shall also be extended an additional three years in the event that:

(i) The Daileys resume the federally licensed sale of handguns before the expiration of the three-year period outlined in Paragraph 11 above, or, without the approval of the City, attempt to obtain a FFL before the expiration of the three-year period; or

(ii) The Daileys sell Inventoried Firearms from their personal collection in violation of the terms outlined in Paragraph 9 (i) – (vii).

23.     For a second Violation, the amount to be forfeited shall be $2,000.00, and for a third or subsequent Violation, $3,000.00. Said amount shall become immediately payable to the City, and the Bond shall be promptly restored to its full amount after any Violation.

24.     The Court shall retain continuing jurisdiction over the parties and the subject matter of the Amended Agreement to enforce the terms of the Amended Agreement against the Daileys, including enforcement through the imposition of sanctions for contempt of court with respect to any knowing and willful failure to comply with the Injunction.

25.     The duties of the Special Master shall terminate upon attainment by the Daileys of three consecutive years from the date of the posting of the Bond without a Violation by the Daileys, i.e. the Compliance Period. The Special Master shall provide to the parties either written certification of compliance or the reasons for non-compliance within thirty (30) days of

- 9 -

the close of the putative Compliance Period.  In the event that compliance is certified, the parties hereto shall jointly move the Court to dismiss this action as against Ms. Dailey.  The motion to dismiss shall include the City's consent to termination of the Bond.

26.    The parties agree that in full satisfaction of the Order, the Daileys have made payment in the amount of $1,000.00 to the City and the City agrees to forego its right to payment of any  remaining amount imposed by the Order.

The parties intending to be legally bound this ___ day of September 2011, have caused this Amended Agreement to be executed by setting their hands and seals as follows.

_____
**MICHAEL A. CARDOZO**
Corporation Counsel of the
City of New York
Attorney for Plaintiff
100 Church Street, Rm. 20-099
New York, New York 10007
(212) 788-1324

By: Eric Proshansky

_____
NANCY DAILEY
**c/o Peddler's Post**
219 Draper Street
Washington Court Hose, Ohio 43160

_____
AARON DAILEY
**c/o Peddler's Post**
219 Draper Street
Washington Court Hose, Ohio 43160

*Close the Case*

SO ORDERED:

_____
United States District Judge
11/18/11

- 10 -

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                        Plaintiff,

            -against-

A-1 JEWELRY & PAWN, INC.; ADVENTURE
OUTDOORS, INC.; COLE'S GUN SHOP, INC.;
DUNKELBERGER'S SPORTS OUTFITTERS;
GALLERY DISTRIBUTING INC.; GREG L DRIGGERS
d/b/a AAA Gun & Pawn Brokers; THE GUN STORE,
INC.; HAROLD W BABCOCK, JR. d/b/a Webb's
Sporting Goods; JAMES THOMAS FARMER d/b/a Jim's
Guns and Whatever; MICKALIS PAWN SHOP, LLC;
NANCY DAILEY d/b/a Peddler's Post; OLD DOMINION
GUNS & TACKLE, INC.; PATRIOT SERVICES, INC.;
VIRGINIA FIREARMS & TRANSFERS, INC.; WELSH
PAWN SHOP, INC d/b/a Big Tom's Pawn Shop;
WOODROW C. HOLMAN III d/b/a Woody's Pawn Shop,

                                        Defendants

-------------------------------------------------------------------- x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 0 3 2008 ★

BROOKLYN OFFICE

06 CV 2233 (JBW) (CLP)

## STIPULATION AND SETTLEMENT AGREEMENT

WHEREAS, plaintiff, The City of New York (the "City") commenced this action

(the "Action") on May 15, 2006 by filing a Complaint against Nancy Dailey d/b/a Peddler's Post

("Ms Dailey") in the United States District Court for the Eastern District of New York and by

filing an Amended Complaint on August 29, 2007;

WHEREAS, Ms Dailey was served with the Amended Complaint on August 29,

2007;

WHEREAS, the parties desire to resolve this matter by an agreement that,

consistent with Ms Dailey's right to sell firearms as permitted by law, implements the most cost-

effective means of assuring that a firearm sold by Ms. Dailey will not be illegally possessed in New York City;

        **NOW, THEREFORE,** in consideration of the mutual promises and covenants set forth below, the parties agree as follows:

        1.    Ms. Dailey hereby consents to the immediate entry of a permanent injunction to govern her sales, the terms of which shall be substantially identical to those set forth in paragraphs 2-14 below (the "Injunction").

        2    Andrew Weissmann shall be appointed as Special Master by the Court. The City shall compensate the Special Master for his fees and expenses. The parties agree that the Special Master shall commence his monitoring responsibilities within thirty (30) days of the signing of this Stipulation and Settlement Agreement and shall commence his training responsibilities described in subparagraph 3(v) at his discretion, but no earlier than thirty (30) days after the date of this Stipulation and Settlement Agreement

        3    During the Compliance Period (as that term is defined in paragraph 13 below, Ms. Dailey is required to (i) comply with all applicable laws and regulations pertaining to firearm sales; (ii) comply with the terms of this Stipulation and Settlement Agreement; and (iii) cooperate fully with the Special Master's monitorship.

        4    It shall be the responsibility of the Special Master to ensure, to the fullest extent practicable, that from the date of this Stipulation and Settlement Agreement forward, firearms sales by Ms. Dailey are made in full conformity with applicable laws and regulations, and that Ms. Dailey has complied with this Stipulation and Settlement Agreement. The Special Master shall be permitted to use all means within his discretion to conduct his monitorship, including, but not limited to, (i) in-store observation, including videotape surveillance; (ii)

- 2 -

records monitoring; (iii) random and repeated integrity testing; (iv) inspection of inventory; and (v) instructional programs designed to provide "best practices" sales training to all Ms. Dailey's employees involved in firearm sales

     5.     Ms. Dailey agrees that the Special Master's responsibilities require access to all documentation regarding firearms sales and firearms in inventory, including, but not limited to, (i) acquisition and disposition books; (ii) ATF Forms 4473 (Firearm Sales Records); (iii) ATF Forms 3310.4 (Sale of Multiple Firearms Records); (iv) trace requests made by the ATF to Ms. Dailey, and (v) firearm customer and sales records, whether written or computerized. Ms. Dailey agrees to make such records available without restriction to the Special Master Provided, however that, if the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") expressly prohibits Ms. Dailey from providing the above documents to the Special Master, she shall not be in violation of the Injunction for withholding such records.

     6.     The Special Master shall report his findings to the parties at least each quarter after being appointed, and serve a copy of same upon the parties. Such reports shall include a determination of whether Ms. Dailey has, to the knowledge of the Special Master, committed any Violations, as that term is defined in paragraph 8, below

     7     Any disagreement between the parties over any practice or decision of the Special Master, including without limitation a decision of the Special Master that a Violation has occurred, shall be submitted by the Special Master as a recommendation to the Court. Any disagreement between the parties over any practice or decision of the Special Master, including without limitation a decision of the Special Master that a firearm sale has been made in violation of Federal, Ohio, or local law or regulation, shall be resolved by the Special Master. Any party has the right to contest before the Court any decision or practice of the Special Master on the

- 3 -

ground that the decision or practice is clearly erroneous.  If the party filing such a contest does not succeed in vacating the Special Master's decision or practice as clearly erroneous, the party shall pay the other party's reasonable attorney fees

        8.      For purposes of this Stipulation and Settlement Agreement, a 'Violation" shall have occurred if, as determined by the Special Master or Court as the case may be, after the date of the Stipulation and Settlement Agreement, (i) Ms. Dailey has sold a firearm to a "Straw Purchaser," as that term is defined below, or to an individual posing as a Straw Purchaser; (ii) Ms Dailey has otherwise sold a firearm in violation of federal, Ohio or local law or regulation; or (iii) Ms. Dailey has violated this Stipulation and Settlement Agreement or failed to cooperate with the Special Master's monitorship.  Minor paperwork violations, including a purchaser completing a 4473 form with his or her middle initial instead of middle name, writing "Y" or "N" instead of "Yes" or "No", abbreviating "Ln" for "Lane," etc., shall not be considered a Violation for purposes of this Stipulation and Settlement Agreement   The Special Master may, in his discretion, refer Violations to the Court for the imposition of contempt sanctions

        9      For purposes of this agreement, a "Straw Purchase" shall have occurred if, as determined by the Special Master,

        (i) Any buyer of a firearm from Ms  Dailey is arrested for, indicted for, or pleads guilty to a violation of either 18 U.S.C. § 922(a)(6) or 924(a)(1)(A) on the grounds that such person made a false statement on ATF Form 4473 that such person was the "actual buyer" of the firearm sold, and a reasonable person would have recognized at the time of sale that a straw purchase was occurring;

- 4 -

(ii) Review of videotapes or store records or other monitoring by the Special Master indicates that a Straw Purchase has occurred and that a reasonable person would have recognized at the time of sale that a straw purchase was occurring; or

(iii) A sale is made to an investigator who is conducting a "Simulated Straw Purchase," which shall mean a purchase in a form substantially like those described in the Amended Complaint, for example, in Amended Complaint paragraphs 234-236 and a reasonable person would have recognized at the time of sale that a straw purchase was occurring.

10.    After the date of this fully executed Stipulation and Settlement Agreement, if a final determination has been made (a final determination shall mean any recommendation or opinion of the Special Master that has been made in writing on a final basis and served upon the parties in accordance with the notice requirements provided in this Stipulation and Settlement Agreement and no objection has been filed with the Court), that a Violation has occurred, $500 shall be forfeited to the City as a penalty. For a second Violation, the amount to be forfeited shall be $1,000, and for a third or subsequent Violation, $1,500. Said amount shall become immediately payable to the City. Provided, however, that the Special Master in his sole discretion may deem a violation non-material in light of all the circumstances, including whether or not the regulating authority is satisfied with any correction

11    The Court shall retain continuing jurisdiction over the parties and the subject matter of the Stipulation and Settlement Agreement to enforce the terms of the Injunction against Ms. Dailey, including enforcement through the imposition of sanctions for contempt of court with respect to any knowing and willful failure to comply with the Injunction. Other than the foregoing, the proceedings in the Action shall be stayed as against Ms Dailey

- 5 -

12.     The duties of the Special Master shall terminate upon attainment by Ms Dailey of three consecutive years from the date of the Stipulation and Settlement Agreement without a Violation by Ms. Dailey and each of her employees and agents acting in their capacity as employees and agents of Ms Dailey (the "Compliance Period")   The Special Master shall provide to the parties either written certification of compliance or the reasons for non-compliance within thirty (30) days of the close of the putative Compliance Period. In the event that compliance is certified, the parties hereto shall jointly move the Court to dismiss the Action

13     If, at any time before three years from the date of this Stipulation and Settlement Agreement, Ms. Dailey provides a sworn statement that she has disposed of her existing inventory of firearms, ceased selling firearms and surrendered her federal firearms license and does not intend to re-commence the selling of firearms ("Early Termination Certification"), then the parties hereto shall jointly move the Court to dismiss this action and terminate all of Ms Dailey's responsibilities under this Agreement, including the requirement to undergo monitoring by the Special Master.

14     Ms Dailey recognizes and agrees that the provision for Early Termination Certification set forth in paragraph 13 hereof constitutes substantial consideration for the City's decision to enter into this Stipulation and Settlement  In the event that Ms Dailey re-enters the retail firearms market within three (3) years of the date of the Early Termination Certification by engaging in the sale of firearms, Ms Dailey agrees to be bound by paragraphs 2 through 12 of this Stipulation and Settlement Agreement for a period of three (3) years following the commencement of sales by Ms Dailey. In that event, paragraphs 2 through 12 of this Stipulation and Settlement Agreement shall be valid contractual obligations between the City and Ms Dailey, enforceable as a contract in any court having personal and subject matter jurisdiction

- 6 -

15.   Except for a breach of this Stipulation and Settlement Agreement, this Stipulation and Settlement Agreement shall not be the basis for the award of damages to any party

16    Except as expressly reserved and stated herein, the City its agents, investigators and attorneys do hereby release and forever discharge Ms. Dailey, and her employees and Ms. Dailey, and her employees, release and discharge the City, its agents, investigators and attorneys, of and from any all claims, actions, causes of action, demands, rights, damages, costs, loss of service, loss of use, expenses, and compensation whatsoever (hereafter, "Claims"), which the parties now have or which they may hereafter have on account of or in any way growing out of, any and all known and unknown, foreseen and unforeseen damages and the consequences thereof relating to or resulting from the matters set forth in the complaint as above-styled. Provided, however, that Claims, if any, arising out of firearms sold after the date of this Stipulation and Settlement Agreement are not released   It is expressly understood and agreed that this release is in full accord and satisfaction of, and in compromise of, disputed claims and that said release hereof is not an admission of liability, but is made for the purpose of avoiding future litigation between the parties   Ms  Dailey denies liability for any damages due the City or to citizens of the City of New York, and intends merely to buy her peace   This Stipulation and Settlement Agreement contains the entire agreement between the parties hereto, and the terms of this Agreement are contractual and not a mere recital

The parties intending to be legally bound this ___ day of February, 2008,

have caused this Agreement to be executed by setting their hands and seals as follows.

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff
100 Church Street, Rm. 20-99
New York, New York 10007
(212) 788-1324
By: Eric Proshansky

NANCY DAILEY D/B/A PEDDLER'S POST
219 Draper Street
Washington Court House, Ohio 43160
By: Nancy Dailey

**So Ordered**

Jack B. Weinstein
Sr. U.S.D.J.

Close the
case administratively
JW 9/12/08

- 8 -

**EXHIBIT 2**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x

THE CITY OF NEW YORK,

Plaintiff,

-against-

A-1 JEWELRY & PAWN, INC.; ADVENTURE
OUTDOORS, INC.; COLE'S GUN SHOP, INC.;
DUNKELBERGER'S SPORTS OUTFITTERS;
GALLERY DISTRIBUTING INC.; GREG L. DRIGGERS
d/b/a AAA Gun & Pawn Brokers; THE GUN STORE,
INC.; HAROLD W. BABCOCK, JR. d/b/a Webb's
Sporting Goods; JAMES THOMAS FARMER d/b/a Jim's
Guns and Whatever; MICKALIS PAWN SHOP, LLC;
NANCY DAILEY d/b/a Peddler's Post; OLD DOMINION
GUNS & TACKLE, INC.; PATRIOT SERVICES, INC.;
VIRGINIA FIREARMS & TRANSFERS, INC.; WELSH
PAWN SHOP, INC. d/b/a Big Tom's Pawn Shop; and
WOODROW C. HOLMAN III d/b/a Woody's Pawn Shop,

06 CV 2233 (JBW) (CLP)

Defendants.

-------------------------------------------------------------------- x

<b>ORDER OF THE SPECIAL MASTER</b>

ANDREW WEISSMANN, Special Master:

Pursuant to the Stipulation and Settlement Agreement entered into by Nancy Dailey d/b/a

Peddler's Post, 219 Draper Street, Washington Court House, Ohio ("Peddler's Post"), and The

City of New York (the "City"), and so ordered by the Honorable Jack B. Weinstein (the

"Settlement Agreement"), on February 18, 2011, I conducted a telephone hearing with the

parties. Aaron and Nancy Dailey attended on behalf of Peddler's Post and Eric Proshansky and

Ari Biernoff attended on behalf of the City.

I make the following findings and conclusions.

1

FINDINGS OF FACT

## The Settlement Agreement

Among other things, the Settlement Agreement provides in paragraph three that Peddler's Post is required to "(i) comply with all applicable laws and regulations pertaining to firearms sales; (ii) comply with the terms of the Settlement Agreement; and (iii) cooperate fully with the Special Master's monitorship."

Paragraph four of the Settlement Agreement provides that, in monitoring Peddler's Post, the Special Master "shall be permitted to use all means within his discretion to conduct his monitorship, including, but not limited to," *inter alia*, "records monitoring" and "inspection of inventory."

## The Peddler's Post and Caesar's Creek Federal Firearms Licenses ("FFLs")

Peddler's Post is licensed by the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") to engage in the business of dealing in firearms from its premises at 219 Draper Street, Washington Court House, Ohio. The proprietors of Peddler's Post, Aaron and Nancy Dailey, were previously licensed by ATF to deal in firearms from Caesar's Creek Market in Wilmington, Ohio ("Caesar's Creek"). On October 13, 2008, however, ATF revoked the license to deal in firearms at Caesar's Creek. Although the Special Master was not provided a copy of the revocation notice by ATF, Mr. Dailey told the Special Master that the revocation was on account of recordkeeping violations.

As detailed in the Special Master's November 17, 2008 report for the period ending September 30, 2008, Mr. Dailey represented to the Special Master[1] that, after the ATF revocation for Caesar's Creek became effective, "he would not be selling any firearms from the Caesar's

---

[1] The Special Master worked throughout this monitorship with consultant Frank Napoli, a former ATF supervisor.

Creek location." And on April 7, 2010 Mr. Dailey represented to the Special Master that, since the time when his license at Caesar's Creek was revoked, he had not sold any firearms, including personal firearms, from that location.

## ATF's Notice of Denial of Peddler's Post Renewal Application

By Notice of Denial of Application for License dated August 2, 2009 ("Notice of Denial"), ATF notified Peddler's Post that it was denying its renewal application for its FFL. Thus, the current license is scheduled to expire on June 6, 2011. Three of the grounds in the Notice of Denial were based on allegations that, during the period from October 13, 2008 through January 2009, Peddler' Post transferred approximately 59 firearms to Mr. Dailey, who subsequently sold those firearms without adequate transactions records at Caesar's Creek, an unlicensed location.

## Initial Investigation of Circumstances of the Denial

On December 7, 2010, the Special Master spoke by phone with Ms. Dailey about the grounds set forth in ATF's Notice of Denial. Ms. Dailey stated that she believed that the only guns sold at Caesar's Creek during the period covered by the Notice of Denial had been from Mr. Dailey's personal collection. She stated that the guns were probably from Peddler's Post originally, but that many of them were kept for a year before being sold. She stated that Mr. Dailey was in the hospital during this period, which might account for any errors in connection with these sales. She also stated that an ATF agent had informed the Daileys that they were no longer permitted to sell guns at Caesar's Creek.

Later that same day, the Special Master spoke by phone with Mr. Dailey about the grounds set forth in ATF's Notice of Denial. In contradiction to his prior representations that he did not sell guns at Caesar's Creek following the license revocation, Mr. Dailey stated that he

3

had sold guns at Caesar's Creek.  He stated that when he lost his license at Caesar's Creek, he

transferred the guns at that location to his personal collection.  Mr. Dailey stated that he

personally had customers at that location complete the ATF Form 4473 for each sale since

October 2008.  Mr. Dailey also represented that the guns sold at Caesar's Creek originated from

Peddler's Post, but that they were his personal guns.  Mr. Dailey also conceded that, following

the revocation of his license at Caesar's Creek, an ATF agent told him that he could not sell guns

at that location.  Mr. Dailey stated, however, that he never got a "definitive opinion" from this

ATF agent about whether he could sell guns there.

### Inspection of Peddler's Post's Records on December 15-16, 2010

The Special Master conducted an examination of the records at Peddler's Post on

December 15-16, 2010.

#### Acquisition & Disposition Book Review

On December 15-16, 2010, the Special Master examined the Acquisition & Disposition

("A&D") books of Peddler's Post.  Additionally, Mr. Dailey provided the Special Master with

his "personal" A&D books, as well as completed ATF Form 4473s reflecting the sales of

firearms claimed to be from his personal collection.

The review of the these records identified recordkeeping violations by Peddler's Post.  A

review of the dates of transfer from Peddler's Post and subsequent sales at Caesar's Creek after

October 13, 2008 indicates that Peddler's Post diverted firearms from Peddler's Post for sale at

Caesar's Creek, an unlicensed location, in order to avoid compliance with federal law and the

oversight of this monitorship.

During the period from October 13, 2008 through December 13, 2008, Peddler's Post, on

14 separate occasions, transferred a total of 66 firearms from the inventory of Peddler's Post to

4

Mr. Dailey's personal collection and subsequently sold 58[2] of these firearms at Caesar's Creek during the period from October 19, 2008 through April 18, 2009. In contrast to the representation by Ms. Dailey, the majority of the firearms sold by Peddler's Post at Caesar's Creek were sold within days of the transfer from Peddler's Post. All of the sales were within a year of the transfer. Eight firearms that Peddler's Post transferred to Mr. Dailey for sale at Caesar's Creek were subsequently transferred back to Peddler's Post – not to Mr. Dailey – and sold by Peddler's Post.

All but two of the sales at Caesar's Creek occurred prior to January 18, 2009, when an alleged theft of guns from Caesar's Creek was reported by Mr. Dailey to the local police department. Mr. Dailey did not report this theft to ATF, as required under 18 U.S.C. § 923(g)(6) and 27 C.F.R. § 478.39a.[3] This failure to report standing alone is not a separate ground for a violation herein, since I find that there is insufficient evidence that a theft occurred or that any allegedly stolen guns came originally from Peddler's Post.

The following chart reflects the transfer of firearms from Peddler's Post's inventory to Mr. Dailey and the subsequent disposition of these firearms:

_____

[2] The number of sales identified by the Special Master, 58, differed from the approximate number identified in the ATF Notice of Denial, 59.

[3] Under 18 U.S.C. § 923(g)(6), "[e]ach licensee shall report the theft or loss of a firearm from the licensee's inventory or collection, within 48 hours after the theft or loss is discovered, to the Attorney General and to the appropriate local authorities." Under 27 C.F.R. § 478.39a:

> Each licensee shall report the theft or loss of a firearm from the licensee's inventory (including any firearm which has been transferred from the licensee's inventory to a personal collection and held as a personal firearm for at least 1 year), or from the collection of a licensed collector, within 48 hours after the theft or loss is discovered. Licensees shall report thefts or losses by telephoning 1-888-930-9275 (nationwide toll free number) and by preparing ATF Form 3310.11, Federal Firearms Licensee Theft/Loss Report, in accordance with the instructions on the form. The original of the report shall be forwarded to the office specified thereon, and Copy 1 shall be retained by the licensee as part of the licensee's permanent records. Theft or loss of any firearm shall also be reported to the appropriate local authorities.

5

| Date of Transfer from Peddler's Post | Transferee | Firearm | Serial No. | Date of Sale at Caesar's Creek or Return to Peddler's Post |
|---|---|---|---|---|
| 10/13/08 | Aaron Dailey | Maverick | MV54523J | 10/25/08 |
| 10/13/08 | Aaron Dailey | Jimenez | O92114 | 10/25/08 |
| 10/13/08 | Aaron Dailey | Jimenez | O90357 | 10/25/08 |
| 10/13/08 | Aaron Dailey | Jimenez | 1133071 | 10/26/08 |
| 10/13/08 | Aaron Dailey | Cobra | CTO54984 | 10/25/08 |
| 10/13/08 | Aaron Dailey | Phoenix | 4302272 | 10/25/08 |
| 10/13/08 | Aaron Dailey | Phoenix | 4302271 | Returned to Peddler's Post |
| 10/13/08 | Aaron Dailey | Cobray | M00022106 | 11/09/08 |
| 10/16/08 | Aaron Dailey | Ithaca | 425198 | 10/25/08 |
| 10/18/08 | Aaron Dailey | RRA AK-47 | H08101164 | 11/01/08 |
| 10/18/08 | Aaron Dailey | Century Arms | 1980KP4591 | 11/08/08 |
| 10/18/08 | Aaron Dailey | Remington | AB059437M | 10/19/08 |
| 10/31/08 | Aaron Dailey | HiPoint | P881773 | 01/04/09 |
| 10/31/08 | Aaron Dailey | HiPoint | P881774 | Returned to Peddler's Post |
| 10/31/08 | Aaron Dailey | HiPoint | P881777 | Returned to Peddler's Post |
| 11/01/08 | Aaron Dailey | Ruger | 125-24630 | 04/18/09 |
| 11/01/08 | Aaron Dailey | Taurus | TRE04323 | 11/02/08 |
| 11/01/08 | Aaron Dailey | Smith & Wesson | PDX0963 | 12/14/08 |
| 11/01/08 | Aaron Dailey | HiPoint | P1400992 | Returned to Peddler's Post |
| 11/01/08 | Aaron Dailey | HiPoint | P1400996 | 11/16/08 |
| 11/01/08 | Aaron Dailey | HiPoint | P1400998 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Smith & Wesson | C708771 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Ruger | 301-43655 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Cobray | M00022088 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Ruger | 370-62558 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Ruger | 370-62643 | 11/08/08 |
| 11/08/08 | Aaron Dailey | Phoenix | 4306152 | 11/08/08 |
| 11/09/08 | Aaron Dailey | RAA AK-47 | H08100431 | 11/09/08 |
| 11/09/08 | Aaron Dailey | RAA AK-47 | H08161017 | 11/09/08 |
| 11/09/08 | Aaron Dailey | CIA-RR15 | JTM02330 | 11/09/08 |
| 11/09/08 | Aaron Dailey | Stevens | E7000080 | 11/09/08 |
| 11/16/08 | Aaron Dailey | Mossberg | H970157 | 11/22/08 |
| 11/16/08 | Aaron Dailey | Remington | 427886V | 11/16/08 |
| 11/16/08 | Aaron Dailey | Smith & Wesson | BAY6179 | 11/16/08 |
| 11/16/08 | Aaron Dailey | Beretta | BER062655M | 12/13/08 |
| 11/16/08 | Aaron Dailey | Czech | C05208 | 11/16/08 |
| 11/16/08 | Aaron Dailey | Walther | 9964BAK | 12/20/08 |
| 11/16/08 | Aaron Dailey | Ruger | 330-30244 | Returned to Peddler's Post |
| 11/16/08 | Aaron Dailey | Jimenez | 1129698 | 11/16/08 |
| 11/16/08 | Aaron Dailey | NEF | NT323089 | 02/14/09 |
| 11/22/08 | Aaron Dailey | High Standard | 566746622 | 11/22/08 |
| 11/22/08 | Aaron Dailey | Smith & Wesson | 34K5249 | 11/22/08 |
| 11/22/08 | Aaron Dailey | Ruger | 300-63978 | 11/22/08 |
| 11/23/08 | Aaron Dailey | Charter | 90459 | 11/23/08 |
| 11/23/08 | Aaron Dailey | Ruger | 313-03857 | 11/23/08 |
| 11/23/08 | Aaron Dailey | Grendel | 25715 | 11/25/08 |
| 11/23/08 | Aaron Dailey | Jimenez | O57147 | 11/23/08 |
| 11/23/08 | Aaron Dailey | Jimenez | O91651 | 11/23/08 |
| 11/30/08 | Aaron Dailey | Marlin | 17482839 | 01/17/09 |
| 11/30/08 | Aaron Dailey | Rossi | F282917 | 11/30/08 |
| 11/30/08 | Aaron Dailey | Jimenez | O89627 | 01/30/08 |

6

| 12/06/08 | Aaron Dailey | Heritage Arms | F63095 | 12/06/08 |
| 12/06/08 | Aaron Dailey | Ruger | 228-76558 | 12/06/08 |
| 12/06/08 | Aaron Dailey | Jimenez | O87304 | 12/06/08 |
| 12/07/08 | Aaron Dailey | Ruger | 664-75002 | Returned to Peddler's Post |
| 12/07/08 | Aaron Dailey | HiPoint | P1400990 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Phoenix | 4304544 | Returned to Peddler's Post |
| 12/13/08 | Aaron Dailey | Ruger | 195-30552 | 12/13/08 |
| 12/13/08 | Aaron Dailey | HiPoint | P1400987 | Returned to Peddler's Post |
| 12/13/08 | Aaron Dailey | HiPoint | P1415666 | 12/20/08 |
| 12/13/08 | Aaron Dailey | Ruger | 174-91724 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Ruger | 305-48427 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Taurus | BT648829 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Rock Island Armory | RIA1120558 | 12/13/08 |
| 12/13/08 | Aaron Dailey | Charter | 69781 | 12/13/08 |
| 12/13/08 | Aaron Dailey | HiPoint | X4105168 | 12/14/08 |

The short time frame between the transfer of firearms from Peddler's Post to Mr. Dailey, and the subsequent sale of the firearms at Caesar's Creek evidences that the guns recorded by Peddler's Post as having been transferred to Mr. Dailey's personal collection were actually for sale at Caesar's Creek. That eight guns were transferred back to Peddler's Post, and not retained by Mr. Dailey, further evidences the falsity of the Peddler's Post records.

Peddler's Post also failed to conduct a background check on the individual purchaser with the National Instant Criminal Background Check System ("NICS") prior to the sale of any of these 58 firearms at Caesar's Creek. For the 58 firearms that Peddler's Post subsequently sold at Caesar's Creek, Mr. Dailey had the purchaser complete an ATF Form 4473 and obtained a driver's license from the purchaser. But the names of the purchasers of these firearms do not appear in Peddler's Post A&D books, as legally required. Further, Peddler's Post did not fill out an ATF Form 4473 on any of the fourteen occasions on which Peddler's Post recorded transfers of firearms to Mr. Dailey's personal collection.

## CONCLUSIONS OF LAW

The Settlement Order does not set forth the applicable standard the Special Master should use when determining whether a violation has occurred. Because the underlying lawsuit brought

against Peddler's Post by the City required a standard of proof of preponderance of the evidence, the Special Master has determined that the preponderance standard is appropriate when determining whether a violation of the Settlement Order has occurred.  However, even if a standard of clear and convincing evidence were to apply, the Special Master would reach the same conclusions.

Based on the foregoing Findings of Fact, the Special Master concludes that Peddler's Post has committed the following violations of the Settlement Agreement as that term is defined by paragraph 8 of the Settlement Agreement.

## Illegal Sale of Firearms at Caesar's Creek

On fourteen occasions between October 13, 2008 and December 13, 2008, Peddler's Post recorded in its A&D books the disposition of 66 firearms to the personal collection of Mr. Dailey.  Peddler's Post, through Mr. Dailey, subsequently sold 58 of these firearms at Caesar's Creek, a location at which the FFL had been revoked, as Peddler's Post knew.  Pursuant to 27 C.F.R. § 478.41(b), an FFL "entitle[s] the licensee to . . . engage in the business specified by the license, at the location described on the license, and for the period stated on the license."  *Id.* § 478.41(b); *see also id.* § 478.50 ("The license covers the class of business or the activity specified in the license at the address specified therein").  The circumstances of Peddler's Post's transfers of firearms to Mr. Dailey and their subsequent sale at Caesar's Creek evidence a clear intent to engage in the sale of firearms from an unlicensed, unmonitored location, as opposed to an intent to transfer firearms to Mr. Dailey's personal collection.  Mr. Dailey served as a mere straw conduit for Peddler's Post.

Thus, Peddler's Post's recording of these guns as having been transferred to Mr. Dailey's personal collection – instead of recording each of these firearms as having been transferred to its

8

eventual purchaser – were in violation of federal recordkeeping requirements. *See* 27 C.F.R. § 478.121(c); 18 U.S.C. § 922(m); 27 C.F.R. § 478.125(e).[4]  These provisions prohibit an FFL from knowingly making a false entry, or failing to make an appropriate entry in a required record.  In addition, Peddler's Post's sale of 58 firearms at Caesar's Creek violated 18 U.S.C. § 922(t)(1) and 27 C.F.R. § 478.102(a),[5] which require a licensed seller to conduct a background check through the NICS system before completing the sale of a firearm.

I do not credit Peddler's Post's assertion that any of these violations were unintentional. To the contrary, I find that the scheme was deliberate.  Mr. and Ms. Dailey stated at the hearing that Mr. Dailey was too ill to sell guns during the approximate time of the transfers at issue; however, Mr. Dailey previously told the Special Master that he sold the guns at Caesar's Creek. At the hearing, when again asked who sold the guns at issue at Caesar's Creek, Mr. Dailey said that he had not and could not explain how the guns came to be there.  Ms. Dailey, by contrast, when asked what she knew about the sales, said that Mr. Dailey would know better than she

---

[4] Under 27 C.F.R. § 478.121(c), "[e]ach licensed importer, licensed manufacturer, licensed dealer, and licensed collector shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, whether temporary or permanent, of firearms and such records of the disposition of ammunition as the regulations contained in this part prescribe. Section 922(m) of the Act makes it unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain any such record."

Under 27 C.F.R. § 478.125(e), "[t]he sale or other disposition of a firearm shall be recorded by the licensed dealer not later than 7 days following the date of such transaction. . . .  The record shall show the date of the sale or other disposition of each firearm, the name and address of the person to whom the firearm is transferred, or the name and license number of the person to whom transferred if such person is a licensee, or the firearms transaction record, Form 4473, serial number if the licensed dealer transferring the firearm serially numbers the Forms 4473 and files them numerically."

[5] 18 U.S.C. § 922(t)(1)(A) provides, in pertinent part, that "a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter . . . before the completion of the transfer, the licensee contacts the national instant criminal background check system." 27 C.F.R. § 478.102(a) provides, in pertinent part, that "a licensed importer, licensed manufacturer, or licensed dealer (the licensee) shall not sell, deliver, or transfer a firearm to any other person who is not licensed under this part . . . [b]efore the completion of the transfer, the licensee has contacted NICS."

about the circumstances of how the guns were sold at that location.  I note that on January 18, 2009, Mr. Dailey was well enough to travel to Caesar's Creek to open the store, discover the alleged theft, and meet with police officers at that location.  The police report reflects information provided directly from Mr. Dailey, including how he allegedly discovered the theft when he arrived at the store, at a time when Mr. Dailey says he was too ill to work.

The Special Master concludes that each of the 58 sales constitutes a violation as that term is defined under paragraph 8 of the Settlement Agreement in that Peddler's Post sold firearms "in violation of federal . . . law or regulation."  *See United States v. Jackson*, 608 F.3d 193, 198 (4th Cir. 2010) (noting that, under 18 U.S.C. § 2(b), one "cannot do indirectly that which he is prohibited from doing directly"); 18 U.S.C. § 2(b) ("Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.").  Because the separate NICS and 4473 violations were part and parcel of the same scheme – whereby Mr. Dailey served as a straw conduit to enable Peddler's Post to sell its guns at Caesar's Creek – I have not imposed separate violations for each law that was violated in connection with each firearm transfer and sale.  Instead, each illegal transfer from Peddler's Post is counted as one violation, although it broke several firearms laws.

## Misrepresentation to the Special Master

On April 7, 2010, Mr. Dailey, on behalf of Peddler's Post, misrepresented to the Special Master that he had not sold any guns at Caesar's Creek following the expiration of the license for that location on October 17, 2008, when in fact Peddler's Post had sold guns at that location, in violation of paragraph 8 of the Settlement Agreement.  *See* Settlement Agreement ¶ 12 (compliance requires absence of violation by "Ms. Dailey and each of her employees and agents acting in their capacity as employees and agents of Ms. Dailey"); *see also Rosenthal & Co. v.*

10

*Commodity Futures Trading Com'n*, 802 F.2d 963, 966 (7th Cir. 1986) (noting that "respondeat superior . . . makes an employer strictly liable . . . for torts committed by his employees in the furtherance of his business"). This misrepresentation constituted a violation as that term is defined under paragraph 8 of the Settlement Agreement in that, by misrepresenting its activities to the Special Master, Peddler's Post "failed to cooperate with the Special Master's monitorship." The City argues that a negligence standard applies to this provision, rather than an intent standard. The Special Master need not decide which standard applies, as I conclude that Peddler's Post failure to cooperate by misrepresenting activities at Caesar's Creek meets the knowing and intentional standard.

**PENALTIES**

Each of the 58 sales of firearms at Peddler's Post constitutes a violation under the Settlement Agreement. The Special Master is required pursuant to paragraphs 8 and 10 of the Settlement Agreement to order that Peddler's Post pay a fine for each violation. The first violation carries a fine of $500 and the second carries a fine of $1,000. Each subsequent violation carries a fine of $1,500. The total penalty resulting from these 58 violations is $85,500. In addition, pursuant to paragraphs 8 and 12 of the Settlement Agreement, the Special Master extends the monitorship until three years after the last of these violations. Since that violation was on April 18, 2009, the monitorship shall extend until April 18, 2012.

As a penalty for the fifty-ninth violation, for failure to cooperate, the Special Master is required pursuant to paragraphs 8, 10 and 12 of the Settlement Agreement to order that Peddler's Post pay a fine of $1,500 and order the extension of the monitorship to April 7, 2013, *i.e.* three years after Peddler's Post's violation.

Since the latest of all the violations is April 7, 2010, the monitorship shall be extended to three years after that date, or until April 7, 2013.  The total penalties for these violations is $87,000.

## APPELLATE RIGHTS OF THE PARTIES

In accordance with paragraph 7 of the Settlement Order, "[a]ny party has the right to contest before the Court any decision or practice of the Special Master on the ground that the decision or practice is clearly erroneous."

Dated: February 19, 2011

_Andrew Weissmann_

Special Master Andrew Weissmann